8 W    25
22 SC ⁸ 92

## Wilson *against* Gray.

If the court below arrest a judgment erroneously, upon a writ of error, the Supreme Court will enter judgment upon the verdict.

*Quere?* Whether a judgment upon a verdict for the defendant in replevin may be arrested, for want of sufficiency in the defendant's pleas.

A defendant in replevin may plead property in himself, or in a stranger, either in bar or in abatement, and either plea, if established, will defeat the plaintiff's right of action. So, also, may the defendant plead property in the plaintiff and himself, and if true, it does not only defeat the plaintiff in his suit, but entitles the defendant to a return of the property.

If a declaration in replevin describe the property with a certainty to a general intent, it will be sufficient. But after a trial, and verdict for the defendant, a plaintiff will not be permitted to avail himself of a want of certainty in the description of the property in his own declaration.

ERROR to the common pleas of *Cumberland* county.

This was an action of replevin by John Gray against James Wilson.

The writ of replevin was " for a store of goods and stock belonging thereto, now in the cellar of the house occupied by Thomas Hennessy, in Carlisle, consisting principally of ironmongery, hardware, paints, dye-stuffs, cordage, brushes, and other goods, and which were formerly in the care and management of James Wilson, as agent of John Gray; also the tools and implements used in the management thereof, consisting of scales, weights, measures, stands, and vessels, the whole being of the value of three thousand five hundred dollars; also, for the key of the said cellar, of the value of fifty cents; also, for the books of entry and account, kept by the said Wilson, whilst engaged as such agent in such management, consisting of day-book, journal, ledger, invoice-book, and the bills relating and connected with the same, being together of the value of three thousand dollars."

The writ was returned "Executed by delivering the property therein mentioned to plaintiff, he having given bond with security."

The plaintiff's declaration was in common form, and described the property in the same words as the writ. To which the defendant pleaded as follows:

" 1. And the said James Wilson, by Frederick Watts, Esq., his attorney, comes and defends the wrong and injury, when, &c. and says that the said John Gray ought not to have or maintain his aforesaid action thereof against him, because he says that the property of the said goods and chattels, in the said declaration mentioned, to wit: a store of goods and the stock belonging thereto,

III.—c*

[Wilson v. Gray.]

consisting principally of ironmongery, hardware, paints, dye-stuffs, cordage, brushes, and other goods; also, the tools and implements used in the management thereof, consisting of scales, weights, measures, stands, and vessels, at the said time when, &c. was in the said John Gray and the said James Wilson, and in pursuance of a parol agreement between them, made on the 1st of March, 1832, were specially deposited in the cellar of the house occupied by Thomas Hennessy, in Carlisle, in the county of Cumberland, and locked up in the same, there to remain until a settlement of the accounts should be made between the said James Wilson and the said John Gray, which arose out of a partnership transaction, between them, the said James and John, and the key of said cellar, and the books of entry and account kept by the said James Wilson, in the said declaration mentioned, were by parol agreement, between the said James and John, deposited specially with William M. Biddle, Esq., the property in the same then and there being also in the said James and John, there to remain until the aforementioned accounts between them, the said James and John, should be settled, which said accounts the said James doth aver never have been settled yet, without this, that the property of the said goods and chattels, at the said time when, &c. was in the said John Gray, as by the said declaration of the said John Gray is supposed. And this he, the said James Wilson is ready to verify. Whereupon he prays judgment, and a return of the said goods and chattles to be adjudged to him.

" 2. And for further plea in this behalf to the said declaration of the said John Gray, the said James Wilson, by leave of the court, here for this purpose had and obtained, according to the form of the statute in such case made and provided, saith: That the said John ought not to have and maintain his aforesaid action thereof against him, because he says that the property of the said goods and chattels, and the said books of entry and accounts kept by the said James Wilson in the said declaration mentioned at the said time, when, &c., was in the said James Wilson, to wit: That the county aforesaid without this, that the property of the said goods, and of the said books of entry and account, kept by the said James Wilson at the said time, when, &c., was in the said John Gray, as by the said declaration is supposed, and this he, the said James Wilson, is ready to verify, wherefore he prays judgment, &c.

" 3. And for further plea in this behalf, the said James Wilson, by leave of the court, &c., further says, that the said John Gray ought not to have and maintain his aforesaid action thereof against him, because he saith that the said store of goods in the said declaration mentioned, consisting principally of ironmongery, hardware, paints, &c. &c. &c., was conducted and managed by the said James, and the purchasing and selling of the wares and merchandise of said store was attended to and conducted by the said James, in pursuance and under the provisions and terms of an article of agree-

ment entered into and executed by and between the said James and John, on the 1st of August, 1829, and that the said James, in conducting and managing said store, and in making purchases for the same, advanced and expended his own money and funds to a large amount, to wit: to the amount of five thousand dollars, and that the said James, in conducting and making said store as aforesaid, and making purchases for the same, incurred and became responsible for debts to a large amount, to wit: to the amount of five thousand dollars, which debts and responsibilities have been since paid, discharged, and satisfied by the said James, out of and with the money and funds of him, the said James, by reason of which, and on account of the money and funds so as aforesaid advanced by him, the said James, and the debts and liabilities so as aforesaid incurred, and for which he, the said James, was liable, which have since been paid and satisfied by him, the said James, he, the said James, acquired and had a lien upon the goods and chattels and the said books of entry and account kept by him, the said James, in the said declaration of the aforesaid John mentioned, which said books of entry and account were deposited by him, the said James, in the hands of William M. Biddle, Esq., and that the said James was entitled to the possession of the said goods and the said books of entry and account in said declaration mentioned, and to have, keep, and maintain the possession of the said goods and chattles, and the said books of entry and accounts, until he, the said James, was fully refunded, reimbursed, satisfied, released, and discharged by the said John, for and on account of the money and funds by him, the said James, so as aforesaid advanced and expended, and that he, the said James, hath not been refunded, reimbursed, and satisfied by the said John for the moneys and funds so as aforesaid by him, the said James, advanced and expended, and that he, the said James, hath not been released and discharged by the said John from the debts and liabilities by him, the said James, so as aforesaid incurred; but that the same have been paid and satisfied by him, the said James, without this, that the property of the said goods and chattels, and of the said books of entry and account at the time when, &c., was in the said John, as by the said declarations of the said John is supposed; and this he, the said James, is ready to verify, &c."

" 4. And for further plea in this behalf, the said James, by leave of the court, &c., further says, that the said John ought not to have and maintain his aforesaid action thereof against him, because he saith that he, the said James, acquired and had a lien upon the said goods and chattels and the said books of entry and account kept by him the said James in the said declaration of the said John mentioned, and was entitled to the possession of the said goods and chattels and the said books of entry and account in said declaration mentioned, and to have, keep, and maintain the possession of the same as is set forth in the plea of him the said James, last before

[Wilson v. Gray.]

pleaded until he the said James was fully refunded, reimbursed and satisfied for the moneys and funds by him the said James advanced and expended and released and discharged by the said John from the debts and liabilities by him the said James incurred as set forth in the said plea of him the said James last before pleaded. And that in pursuance of a parol agreement made between the said James and the said John on 1st March 1832, the aforesaid goods and chattels in the said declaration mentioned were specially deposited in the cellar of the house occupied by Thomas Hennessy in Carlisle, in the county of Cumberland, and locked up in the same, there to remain until a settlement of accounts should be made between the said James and the said John, and the said James refunded, reimbursed and satisfied for the moneys and funds by him, the said James, so as aforesaid advanced, expended and released and discharged by the said John from the debts and liabilities by him, the said James, so as aforesaid incurred, and the key of the said cellar and the books of entry and accounts kept by the said James in the said declaration mentioned were by parol agreement between them, the said James and John, deposited specially with Wm. M. Biddle, Esq., there to remain until the before-mentioned accounts between them, the said James and John, should be settled and the said James refunded, reimbursed and satisfied for the moneys and funds by him, the said James, so as aforesaid advanced, expended, released and discharged by the said John from the debt and liabilities by him, the said James, so as aforesaid incurred; and the said James doth aver that the said accounts between them, the said James and John, have not been settled, and that he the said James hath not been refunded, reimbursed and satisfied by the said John for the moneys and funds by him the said James, so as aforesaid advanced and expended, and that he, the said James, hath not been released, discharged and satisfied by the said John of and from the debts and liabilities by him the said James, so as aforesaid incurred. But that the same have been paid and satisfied by him the said James. Without this, that the property of the said goods and chattels and of the said books of entry and account at the said time, when, &c., was in the said John as by the said declaration of the said John is supposed. And this he, the said James, is ready to verify," &c.

Plaintiff's replication.

"The plaintiff replies that he ought not to be barred of his said action by reason of any thing in the plea of the defendant pleaded, because he says that the property in the said goods and chattels named, &c., was in the said plaintiff; without this, that the said property was in the said John and James, as the said James has pleaded, and without this, that the said goods and chattels were so locked up by virtue of any agreement between the said John and James, until any such settlement should be made as therein pleaded, and without this, that the key and books, &c., were deposited with

[Wilson v. Gray.]

William M. Biddle, Esq., to remain, &c., as therein pleaded, &c., therefore, &c.

" And the said John Gray as to the said last pleas in bar of the said James Wilson, to the declaration of him the said John Gray saith, that he by reason of any thing by the said James Wilson in the first of those pleas above alleged, ought not to be barred in his aforesaid action, because he saith that the property of the said goods and chattels, and the said books, &c., in the said declaration and plea mentioned, was in him, the said plaintiff, and not in the said defendant.

" And to the second further plea, above alleged, the said John Gray saith, he ought not to be barred in his aforesaid action, because he saith that the said James Wilson in conducting and managing the said store, &c., in the said declaration and plea mentioned, did not in making purchases, &c., for the same, advance and expend of his, the said James Wilson, own money, and funds to a large amount, to wit: to the amount of 5,000 dollars. And that the said James Wilson did not incur, and become responsible for debts on account of the same, to a large amount, to wit: to the amount of 5,000 dollars that have since been paid by him the said James, out of his own money and funds, and the said John further saith, that the said James did not acquire a lien upon said goods and chattels, books of entry, &c., in the said declaration and plea mentioned. And that the said books of entry and accounts in the said declaration and plea mentioned, were not deposited in the hands of Wm. M. Biddle, Esq., by the said James, and that the said James was not entitled to the possession of the said goods and chattels, books, &c., and that the said James fully paid any moneys, &c., by him expended and advanced by him the said James in his conducting the store aforesaid; and of this, the said John puts himself upon the country.

" And to the third plea above alleged, the said John Gray saith, that he ought not to be barred in his aforesaid action, because he saith that no such parol agreement, as mentioned in the said plea, was made between him the said John and the said James Wilson; and that the said goods and chattels in the said declaration and plea mentioned, were not specially deposited in the cellar of the house occupied by Thomas Hennessy, &c., there to remain until a settlement of accounts should be made between the said James and John, and that the said James is fully paid all moneys, &c., by him expended, &c., in the management, &c., of the said store; and that the said James never incurred debts and liabilities on account of said store, for which he is responsible; and the said John further saith, that no such parol agreement as in the said plea mentioned, that the key of the said cellar, books of entry, &c., should be deposited with Wm. M. Biddle, Esq., there to remain, &c., was ever made between him the said John and the said James. And of this, he, the said John, puts himself upon the country.

[Wilson v. Gray.]

The plaintiff then gave the following evidence:

" Articles of agreement made and concluded this fourth day of August, in the year of our Lord one thousand eight hundred and twenty-nine, by and between John Gray, of the borough of Carlisle, county of Cumberland and state of Pennsylvania, merchant, of the one part; and James Wilson, of the same place, county and state aforesaid, of the other part, witnesseth:

" That whereas, the said John Gray is about to open and establish, in the said borough of Carlisle, a hardware and ironmongery store; and whereas, the said John Gray is to entrust the management of said store to the above named James Wilson, as his sole agent, it is agreed that said concern shall be opened and conducted in the manner and form following, viz: The said John Gray is to place in the said store, two thousand dollars worth of goods; that is, all the hardware that is now in the store of the said John Gray, at first cost, and the residue, if any, to be made up in cash, for the purpose of enlarging said store. And the said James Wilson covenants and agrees to devote his whole time and attention in purchasing and selling all such wares and merchandize as shall be entrusted to him, the said James Wilson to give sufficient security to the said John Gray for all goods so entrusted, which security shall remain as long as the said John Gray shall continue the said James Wilson as his agent, and also sufficient security for the proper management of said business; and in consideration of the services to be rendered by the said James Wilson, the said John Gray is to allow him one half of the clear profits of said store, and a yearly allowance for the one half part of his time; and if another person should be found requisite to assist in the management of the said store, said person is to be procured by the said James Wilson, by and with the advice and consent of the said John Gray, and at the expense of said John, at which time the yearly compensation to James Wilson is to cease. And in order to ascertain fully the profits that shall or may arise from said store, it is agreed that a yearly settlement shall take place; and after deducting the costs and charges that may have been incurred by said store, the net proceeds shall be equally divided. And it is agreed by the said John Gray to continue the said store for the term of three years, counting from the first day of April, one thousand eight hundred and twenty-nine, and the said James Wilson as his agent, unless the profits arising from said store should not be a sufficient inducement for its continuance; and in such case, it is agreed that the said John Gray shall give the said James Wilson three months notice; and it is also agreed that, for any other cause, the said John Gray shall have the privilege of discontinuing the said store, provided always that the same notice be given. And it is also agreed, that in case the said James Wilson shall see fit to relinquish the said agency, he shall give the said John Gray three months' notice, and during the continuance of said agency, to be under the direction of John Gray.

And it is further agreed, that on the discontinuance of said store, the said John Gray is to have all the goods in the store, if he should deem it fit to take them; if not, then the said James Wilson is to have the same at the cost price, if he wish—the said James to secure the said John by good and sufficient security for the whole amount. And it is agreed, that the expense of fitting up the said store room, store house and all other improvements that may be made for carrying on said business, to be paid out of the profits of said store; and in case of its discontinuance, the restoring of said store room to its tenantable condition, likewise to be paid from the profits arising from said concern; that is, the said John Gray to pay one half and the said James Wilson the other half; and also the rent to be paid in the same manner—the said James Wilson, in all matters that may tend to affect the interests of the said store, to consult and advise with the said John Gray. And further it is agreed, by and between the said John Gray and the said James. Wilson, that there shall be had and kept, from time to time, and at all times during the continuance of said term, perfect, just and true books of account, wherein each of the parties to this agreement shall duly enter and set down, as well all money by him received, paid, expended and laid out in and about the management of the said business; which said books shall be used in such manner, so that the said parties may have free access thereto without molestation or hindrance to the other. And at the end of the said term of three years, or sooner determination of these presents, be it by the death of one of the parties or otherwise, they the said John Gray and the said James Wilson each to the other, or in case of the death of either of them, the surviving party to the executors or administrators of the party deceased, shall and will make a true, just and final account of such profits that may remain in the hands of either party at the happening of such event.

"In witness whereof, the parties to this agreement have interchangeably set their hands and seals, the day and year above written.        "JOHN GRAY,        [L. s.]
                                "JAMES WILSON.    [L. s.]"

The defendant then gave in evidence the inventory of the goods replevied, made by the sheriff, amounting to 2274 dollars 45 cents; the accounts on the books uncollected, 2447 dollars 49 cents; amounting to 4722 dollars 14 cents. And then gave evidence of the payment of debts by James Wilson after the dissolution between the parties as follows: To Charles Fischer & Co. 131 dollars 12 cents; Jacob Albert & Co. 3285 dollars 48 cents; Philip Littig & Son, 155 dollars 37 cents.

Thomas Hennessey sworn.—After I had rented the house referred to, and moved my family into the back part of the house, I was anxious to get the store room to put our goods into it, and insisted upon having it; the same was, until then, occupied by a stock of

[Wilson v. Gray.]

store goods, hardware, in dispute between Mr Gray and Mr Wilson. Mr Wilson and myself went in to talk to Mr Gray on the subject. Mr Wilson told Mr Gray that I wanted possession of the store room, and that in consequence of the hardware being there, could not get it. He and Mr Gray then agreed that Mr Wilson should remove the goods into the cellar of the house, and I should then get possession of the store. The goods about that time were removed into the cellar; after which, I was present with Mr Gray and Mr Wilson, one asked the other (which, I do not recollect), what should be done with the key of the cellar where the goods were? Mr Wilson then proposed that it should be placed in the hands of Mr Biddle, where the books and papers were: and that was agreed to by both parties."

William M. Biddle, Esq., sworn.—Some time in the spring of 1832, Gray and Wilson spoke to me on the subject of settling their accounts. Mr Gray was dissatisfied with the manner of keeping the books by Wilson, by double entry—he did not understand it. It was agreed between them that I should take the books and papers, and begin with an account, from the commencement to the conclusion of their business, to ascertain if the books were justly kept, and how the accounts stood, and what the standing of each of the parties in relation to the account. After I had been engaged a day or two looking over the matters, Gray and Wilson came one morning to my office with the key, I believe, of the cellar in which the ware was placed. It was stated by one of them, (I think Wilson,) that I was to keep possession of this key, until it was ascertained how the accounts were, and how the parties stood in relation to each other: Mr Gray assented, and the key was left in my possession. I was employed some three or four weeks afterwards in examining the books, invoices, sales, cash accounts, and the matters connected with them; during that time, the parties were present in my office, sometimes separately, sometimes together. I went on so far as to ascertain that the accounts and sales, &c. were correct. In the progress, I ascertained they were at variance about some matters that were of importance, and unless they agreed about them, it would be impossible for me to bring the matter to a close. One item in dispute was, &c.

[Here was a memorandum of some items in dispute.]

Mr Biddle, cross-examined.—When the keys were put in my hands nothing was said about Albert. I had no knowledge of the assignment by Mr Wilson to Albert for some months after the transaction, of which I spoke last night. Nothing was said about the deposit of the key but what I said last night; I remember no other transaction.

The books of account considered in evidence and read to the jury.

George Beetem, sheriff, sworn.—When I demanded the key from Mr. Biddle, he said it had been given to him by both parties, and he was directed not to give it up but by the consent of both. He

[Wilson v. Gray.]

proposed to go with me to Wilson—we sent to Wilson. Biddle spoke to him about giving up the key—he said he thought the sheriff had taken sufficient security; he said he might do as he pleased in giving it up or not, or something to that purpose—Biddle replied, he did not like to get into any difficulty about it, or to give it up without consent of both parties as stated before. It hung over for some time after I had the rent in my hands. I do not know whether he would or would not give security—he said I should not be in a hurry. I waited upon him some weeks; I spoke to Mr Watts, attorney for Wilson; he said they would not give bail.

The jury found a verdict for the defendant, and assessed the damages for the detention of the goods at 792 dollars, 12 cents. The plaintiff filed reasons for a new trial, upon the argument of which the court offered to render a judgment upon the verdict upon certain conditions, which the defendant refused to accede to: and requested the court to enter a judgment on the verdict.

The court then arrested the judgment and assigned the following reasons:

" The offer of judgment on the above terms being rejected by defendant, the reasons why we arrest the judgment are, that a joint owner or depositor cannot sustain a replevin against his fellow. The right of the plaintiff, to enable him to recover, must be exclusive of the defendant's, and when such facts exist so as to defeat plaintiff's right, it also would exclude a return to the defendant in exclusion of the plaintiff's right. See Harsh and Fitzgerald, 2 *Mass. Rep.* 507; Portland Bank *v.* Stubbs, 6 *Ibid.* 422; Gardner and Dutch, 7 *Ibid.* 427; 5 *Mass. Rep.* 303; Wademan and Robinson, &c. &c.

" There can be no return, for there is no specification of the goods in the writ or detention. See Kirde and Shaw, in note 2 *Mass. Rep.* 377; Rodie and Robinson, 13 *Ibid.* 284. It is not like the case of Aughinbaugh and Warner; there the defendant retained the property, and could have shown it; here it was delivered to plaintiff. It is no part of his duty to show the property for return, and his bail are interested. The agreement on the trial is of no avail; if the replevin bond were invalid by reason of the original defect of the writ, it is not cured afterwards by the assent on trial. It is expressly decided that a schedule annexed to the writ cannot be deemed a part of it. 2 *Mass. Rep.* 377. 350. 284."

Errors assigned.

1. The court erred in arresting the judgment without any motion for that purpose, and more than two months after the verdict was rendered.

2. The court erred in arresting the judgment for the reasons assigned.

*Graham* and *Watts,* for plaintiff in error. A motion in arrest of judgment must be made within four days after verdict. 1 *Penns.*

[Wilson v. Gray.]

*Prac.* 375; 2 *Dall.* 229.    Here the judgment was arrested without a motion, and not within the four days.    But the reasons assigned by the court below are untenable: for a defendant in replevin may plead that the property was in a third person. 6 *Mod. Rep.* 81. *Gilb. on Replevin* 127.    And although the plaintiff may have been a part owner of the property, it does not follow that he has a right to demand it by a writ of replevin; and a plea by the defendant that the property was in him and the plaintiff, if sustained by proof, will defeat the plaintiff's action. *Gilb. on Replevin* 128; *Carth. Rep.* 243.

If one of the pleas be bad, it will not vitiate the finding of the jury, and the judgment may be entered upon that which is good: for in replevin, the defendant's situation is that of a plaintiff in any other case: and it is well settled, that if there be two counts in a declaration, one good and the other bad, the judgment may be entered upon that which is good, and this even after verdict and motion in arrest of judgment. 2 *Dall.* 229; 6 *Binn.* 307; 2 *Watts* 311.

If the judgment be arrested by the court below, and reversed on error, the court of error will enter judgment on the verdict. 2 *Serg. & Rawle* 392.

*Biddle* and *Alexander*, for defendant in error, cited *Wilkinson on Replevin* 52. 86. 92; 2 *Mass. Rep.* 512.

The opinion of the Court was delivered by

KENNEDY, J.—The court below seem to have thought that great hardship, if not injustice, would have been done by rendering a judgment upon the verdict, as found by the jury, in favour of the defendant below, who is the plaintiff in error here.    If so, it is only to be regretted that they did not, upon the application of the plaintiff below, set the verdict aside and grant a new trial, instead of arresting the judgment.    It was within their discretion to have granted a new trial; and if they were convinced, from the evidence, that the jury had either mistaken the facts of the case, or the law of it, they unquestionably, if injustice, in their opinion, would be the inevitable consequence of rendering judgment on the verdict, ought to have set it aside.    But no such discretionary power can be exercised by this court.    And, indeed, seeing we cannot conveniently be furnished with the same means which the court below must always have of judging rightly in this respect, it would not seem to be right or expedient, so far as the administration of justice is concerned, which is certainly the great, if not the only object to be attained by the exercise of such a power, that we should have it.    The only question for our consideration is, does the face of the record warrant the arrest of the judgment upon the verdict by the court below?   If it does not, and the issues upon which the parties went to the trial of the action were material, and the verdict of the

jury thereon be such as to determine them, we must reverse the act of the court, arresting the judgment, and enter judgment upon the verdict in favour of the plaintiff in error, however great the injustice may be that will in this particular instance arise from it.

If any one of the defendant's pleas below had been bad, and such in law, admitting it to be true, as could not have precluded the plaintiff there from maintaining his writ of replevin, there might have been some colour for arresting the judgment, upon the supposition that the defendant is an actor in replevin as well as the plaintiff, though, perhaps, properly speaking, he is only to be regarded in the light of a plaintiff where the writ is founded on distress, and not sued out as a substitute for trover or trespass, as it may be in this state and some others of the Union.   The reason for arresting judgment upon a verdict given for the plaintiff, is either because the plaintiff has set out no cause of action in his declaration, or having introduced into it two or more counts, his cause of complaint in one or more, if not all, is not sufficient in law to enable him to support his action; and hence, upon the principle of analogy, had any one of the defendant's pleas been had, it might with some plausibility, perhaps, have been alleged that, notwithstanding the verdict, which is general upon all the pleas and issues joined thereon, in his favour, he was not entitled to have judgment upon it; because it might possibly be, for aught that could be known to the contrary, that the jury had given their verdict in his favour upon the bad plea alone. But then there is no ground for such allegation and presumption here; for either one of the pleas, if true, is sufficient in law to show that the plaintiff below had no right to maintain the writ of replevin, and that he had no right whatever to have the goods in question delivered over to him, as they were, by the sheriff, under the authority of the writ.   The defendant in replevin may plead property in himself or in a stranger, either in bar or in abatement; and either plea, if established, will destroy the plaintiff's right of action. Presgrave *v.* Saunders, 1 *Salk.* 5; S. C., 6 *Mod. Rep.* 81; *Holt* 562; 2 *Ld Raym.* 984; 1 *Ventr.* 249; *Gilb. on Replevin* 127.   And whether the property be in the defendant or a stranger, the defendant ought to have a return, because he had the possession, which was illegally taken from him by the *replevin,* in a manner to which the plaintiff had no right. Butcher *v.* Porter, 1 *Salk.* 94; S. C., *Carth.* 243; *Gilb. on Replevin* 127, 128.   So the defendant may plead property in the *plaintiff* and J. S. in abatement of the replevin; and although it admits a right of deliverance in the plaintiff, yet it does not allow it under a writ in the name of the plaintiff alone; and if the defendant make conusance, he will, upon establishing the truth of his plea, be entitled to a return. *Gilb. on Replevin* 128.   Now upon the principle of these authorities, and the reason of them, 'as also that of the thing itself; the defendant may plead property in the plaintiff and himself, and, if

[Wilson v. Gray.]

true, it must not only defeat the plaintiff in his writ, but entitle the defendant to a return of the property; because the latter having had the possession of it, coupled with an interest which makes his case the stronger, until improperly deprived thereof by the sheriff, under the plaintiff's writ, which he had no right to use for such purpose, has a right to be placed in *statu quo,* that is, restored to the possession of the property as the joint owner thereof. But the case of the defendant here is still stronger, as is shown by his plea and the finding of the jury. From these it would appear that he was not only a joint owner of the property, but, in addition thereto, had a lien or claim upon it, for which it was to be withheld from the plaintiff until the defendant should be satisfied in the manner agreed on between them for his claim.

Seeing, then, that each of the pleas is good and sufficient in law, and the jury having found generally in favour of the defendant upon them all, it follows that the plaintiff below has no right to retain the property. But the arrest of the judgment by the court below went to protect the plaintiff in the possession of it, or at least to deprive the defendant of the judgment and process of the court to have a return thereof, as well as a recovery of the damages assessed for the detention of it. This, however, cannot be upon any principle recognised as known to the law. If the court below, from the evidence given on the trial of the cause, could not, consistently with the principles of law and justice, approve and confirm the verdict by rendering a judgment upon it, they ought, as has been already suggested, to have set it aside and granted a new trial. It was said on the argument, by the counsel for the defendant in error, that the verdict for the damages was bad: that the defendant in the court below was not entitled to claim, and could not recover, damages in such a case. It is true that he could not recover damages for the value of the property, on account of the plaintiff below having taken it under the writ of replevin; but if improperly taken under it, that is, without right on the part of the plaintiff to do so by such writ, the defendant had clearly a right to claim damages at the hands of the jury for the detention of the property, according to the case of Easton *v.* Worthington, 5 *Serg. & Rawle* 130; and this is all that the jury profess, by their verdict, to have allowed.

Where the defendant in replevin avows the taking of the property as a distress for rent in arrear, or any other sufficient cause of the like kind, or makes conusance, such avowry is considered in the nature of a declaration; *Co. Lit.* 303; 1 *Saund.* 347 *b, n.* 3; and the party making it, in the nature of a plaintiff; 1 *Saund.* 347 *b, n.* 3; and for this reason, as it would seem, the avowry or conusance, not being technically the plea of a defendant in the action, requires no averment in its conclusion, as every affirmative plea does; *Bret's Case,* 1 *Plowd.* 342; *Ibid.* 163, and the cases there cited in the margin; *Co. Lit.* 303 *a;* 1 *Saund.* 347 *e, n.* 7. So when the

[Wilson v. Gray.]

defendant, by avowing or making cognizance, becomes, as it were, a plaintiff in prosecuting his remedy by distress; and showing his right thereto, the plaintiff in the writ is regarded in the character of a defendant, and therefore entitled to the benefit of 4 Ann, c. 16, which allows a defendant, with the leave of the court, to plead two or more pleas; 1 *Chitty's Civil Pr.* 560 (2d Lond. ed.); which he could not be permitted to do under this statute, if he were to be looked on as a plaintiff strictly, and his answer to the avowry or cognizance as a technical replication; because, the statute does not extend to replications, *Ibid.* 549. And hence it is, if it appear from the avowry of the defendant, according to his own showing, that he had no right to distrain or take the goods replevied, though upon an issue of fact joined thereon, the jury find a verdict in his favour; the court will, on motion of the plaintiff or his counsel, arrest the judgment, the same as they would, in any other case, arrest it at the instance of the defendant, when the verdict was in favour of the plaintiff, who had shown, by his declaration, that he had no cause of action. English *v.* Burnell, 2 *Wils.* 258. But here, even if the defendant below be considered in the nature of a plaintiff, on account of his claiming to have a return of the property awarded, and a judgment, *quod recuperet,* as to the damages assessed by the jury for the detention of it, which seems to be carrying the idea of his being a plaintiff or actor in the action quite as far as there is any colour for, no one of his pleas is bad, but each sufficient, as has been shown, to defeat the right of the plaintiff below to recover or to retain the possession, which he has obtained of the property. Neither can it be objected now, after a trial has been had, supposing the fact to be so, that the pleas are inconsistent or contradictory, because the plaintiff below must be considered as having had the sanction of the court to plead them, by obtaining leave of it for that purpose, without which they could not have been pleaded according to the statute. If the plaintiff had conceived that the pleas were exceptionable, because repugnant or contradictory, he ought to have moved the court below before he replied to them, or, at latest, before the trial, to have stricken out such of them as was necessary to remove the inconsistency. Nor am I inclined to think that it ought, after a trial, to avail the plaintiff below any thing, if one or more of the defendant's pleas were bad, provided one of them appears to be good, and sufficient to sustain and justify the finding or verdict of the jury. Though the rule is settled, by authority, that a judgment can not be entered upon a general verdict in favour of the plaintiff, where his declaration contains two or more counts, one of which is bad; yet I am not aware that this rule, or the principle of it, has ever been extended and applied to the case of a general verdict in favour of a defendant, when he has put in several pleas, some of which only are bad. If there be one good plea among them, going to meet

VIII.—D*

the plaintiff's whole cause of action, there seems to be no good reason why the defendant should not have judgment upon the verdict. Because, if evidence was given on the trial tending to prove the good plea, it ought to be presumed that the jury founded their verdict upon that evidence, and intended to find the issue joined on that plea in favour of the defendant; and that the unavailable pleas, and the evidence that was given in support of them, were left out of view by the jury in giving their verdict. This is the rule in criminal cases, even against defendants, where the most dear and valuable of all rights belonging to the citizen are involved; so that if a defendant be found guilty by the jury, generally, upon an indictment containing several counts, some of which are bad and others good, it shall be intended, if the evidence warranted it, that the jury found him guilty on the good counts. If, however, in either case, there should be no evidence, in the opinion of the court before whom the trial is had, to justify the jury in finding a verdict for the defendant upon the good plea, or a verdict of guilty against him on the good counts in the indictment, the court then, without hesitation, ought to set the verdict aside and grant a new trial; but it forms no ground for a court of error to interfere and grant relief. Hence the second plea on the part of the defendant, claiming the exclusive property in the goods as belonging to himself, being sufficient to sustain the verdict of the jury, we might presume, if the other pleas were insufficient to support the verdict and to account for the finding of the jury, that they intended their verdict should be applied to the issue joined on that plea.

Neither can it be objected, and more especially by the plaintiff, after a trial has been had and a verdict given for the defendant, that the property is not described with sufficient certainty in the declaration. It would seem to be contrary to a proper sense of moral as well as municipal justice, to permit a party to derive any advantage from his own omission or default. But the declaration, according to the rule as now settled in replevin, would seem to be good enough; if it be certain to a general intent, it is sufficient, especially after verdict. In Kempston *v.* Nelson, *Bacon's Abr. tit. Replevin H, MSS. case,* where the declaration was for taking divers goods and chattels, to wit, a certain *parcel* of lint and a certain *parcel* of paper, the defendant avowed for rent; and after a verdict for the plaintiff, an exception was taken in arrest of judgment, that the declaration was uncertain in not specifying the quantities contained in the parcels; but *Parker* C. J., who delivered the opinion of the court, said that the declaration would undoubtedly have been ill on demurrer; but the defendant having avowed the taking of the *goods in the declaration,* the avowry had cured the defect, as thereby both parties were agreed what the goods were; and the defendant himself having prayed a return of them, there was no controversy between him and the plaintiff about them: and to oblige the plaintiff to a greater certainty would have been of no

[Wilson v. Gray.]

service; for if he had demanded 500 reams of paper and proved only one, he must recover; *for in torts, if the plaintiff prove any part of his case, it is sufficient;* and as to the difficulty of delivering the goods upon a *retorno habendo,* in case the avowant prevailed, he said there was no weight in that objection; for the sheriff, when he came to make a return, might have the defendant's assistance to show him which were the goods; and he was not obliged to execute the writ, unless somebody attended to point out the things he was to deliver; and it is a good return for him to make "*quod nullus venit ex parte defend' ad ostend' averia;*" *Rast.* 570 *b, Dalt. Sheriff,* 274; and the case of Mone *v.* Clypsam, *All.* 33, *Sly.* 71, *S. C.,* was fully considered and overruled, 2 *Saund.* 74 *b, n.* Here, in the case before us, the defendant pleaded property in *the goods and chattels mentioned in the declaration,* which cured any defect that otherwise might have been taken advantage of, because it thereby appeared, as Chief Justice Parker says, that both parties were agreed as to what the goods were; and when the sheriff comes to make a return of the goods, he can have the defendant's assistance in pointing them out: so that all the objections raised on the ground of uncertainty, are thus removed.

The arrest of the judgment by the court below is reversed, and judgment entered on the verdict in favour of the plaintiff in error.