# Johnson *v.* Groff, Appellant.

*Replevin—Husband and wife—Defense—Title.*

In an action of replevin a good title shown in defendant's wife will defeat the plaintiff as well as a good title shown in the defendant himself.

In an action of replevin for a piano, where it appears that the defendant after having purchased the piano from the plaintiff, had made an assignment for the benefit of creditors, and that thereafter the plaintiff claimed to rescind the contract of sale on the ground of fraud, he may show that at the assignee's sale he gave notice of such rescission, but such testimony as against the wife of the defendant claiming the piano as a gift from the purchaser at the sale, must be submitted to the jury to determine whether such notice was in fact given.

*Sale—Rescission—Insolvency—Fraud.*

The mere fact that a purchaser is insolvent at the time of a contract of sale, alone does not permit the seller to rescind the contract.

In a proceeding which aims to rescind a contract of sale of a chattel, the seller may introduce testimony showing acts done by the purchaser contemporaneously with the purchase, indicating a scheme or general purpose to procure merchandise on credit without intention or ability to pay for such merchandise, and by such confessions of judgment to relatives to make such merchandise liable to execution.

*Replevin—Measure of damages.*

In an action of replevin to recover a piano alleged to have been purchased from plaintiff through fraud, the measure of damages is not the value of the chattel when originally sold with interest, but its value when the plaintiff became entitled to its possession by seizure under the writ of replevin.

Argued Nov. 13, 1902.    Appeal, No. 197, Oct. T., 1902, by defendant, from judgment of C. P. Lancaster Co., Aug. T., 1895, No. 40, on verdict for plaintiff in case of Kirk Johnson, trading as Kirk Johnson & Company, v. Abram E. Groff.    Before BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Replevin for a piano.    Before LIVINGSTON, P. J.

At the trial it appeared that in August, 1893, the plaintiff sold the piano in question to the defendant.    The plaintiff showed that the piano had been delivered to the defendant upon representations made by him that he owned a farm, and that it had been paid for.    Shortly after the purchase of the piano, defendant confessed judgment to his father and to his wife, and thereafter made an assignment for creditors.    At the assignee's sale plaintiff gave notice that he claimed the piano, but it was purchased by a relative of the defendant's wife.    It was alleged that the purchaser gave the piano to the defendant's wife.

When Gabriel Pioso was on the stand the following offer was made:

Plaintiff offers to prove by witness on the stand that a few weeks before Groff's failure and assignment, A. E. Groff procured from him two horses on the representation that he owned his farm clear of debt.

Objected to by defendant.    Admitted.    Defendant excepts. [12]

" Q. What if any representations did he make to you at the time he bought them? " Mr. Davis :· " Did you take a note? " Objected to by plaintiff. Disallowed. Defendant excepts. " Q. State what if any representations Groff made to you at the time he got these horses worth $475. A. Well, he came down to the stable. That is the first pair of horses I ever sold him. He picked two gray horses out, and I sold them to him for $475. Q. What if any representations did he make about financial conditions? A. He went into the office and wanted to settle and he gave a note. Q. What if any representations did he make about financial conditions? A. I wanted him to give security, and he told me he owned a farm. I asked him then whether he owned the farm where he lives on. He said yes. I knowed where the farm was." [13]

" Q. Did he get the horses? A. Yes, sir." Objected to by defendant. " Q. Did you get a note? " Objected to by defendant. " A. Yes, sir. Q. Did he or not get the horses? A. Yes, sir. Q. Was the note ever paid? " Objected to by defendant. Admitted. Defendant excepts. " A. No, sir." [14]

Milton Kendig, a witness called by the plaintiff, testified as follows : " Q. State whether or not about that time he procured any property from you? A. He bought a horse from me the 4th day of September, 1893. Q. What price? A. $350. Q. Did he ever pay you for him? A. No, sir." Mr. Davis asks that the testimony of this witness be stricken out on the ground no proof of fraud in the sale or transaction was shown by the witness.

Plaintiff objects to its being stricken out.

The Court: I order it to remain. Defendant excepts. [15]

Frederick Andes was asked these questions : " State how many horses he procured from you on August 30, 1893." Objected to by defendant. Admitted. Defendant excepts. "A. Six. Q. What was the value of them? A. $1,025. Q. What did you get for them? A. Nothing. Q. Do you know what became of them? A. No." [16]

Defendant presented these points :

4. The representation which Brinkman, the salesman and witness for plaintiff, testified to, that the defendant made some time before the contract of sale was made, viz : " That the farm or property is mine and the beauty of it is that it is paid

for " (or words to that effect) has not been shown to have been false, and therefore the verdict should be in favor of the defendant, as fraud cannot be presumed but must be proven. *Answer:* The jury will say, will answer that question. It is a question of fact. They have heard what the proof is in regard to that statement at that time. [5]

5. There is no proof that the defendant made any statements to either the plaintiff or his salesman, Brinkman, about his indebtedness in any amount or to any person, and therefore it makes no difference in this case, that he was indebted to his father, his wife and others, at the time of the sale of the piano to Groff. *Answer:* The jury will scan the testimony and ascertain whether that be true or not. They have seen the papers and heard the testimony presented showing what time he became indebted, and will say whether he was indebted at that time or not. [6]

6. If Wayne I. Groff, the purchaser of the piano in suit at the assignee's sale, bought the same, without notice or knowledge of the plaintiff's claim thereto, and without knowledge of fraudulent representations, if any, by A. E. Groff, the defendant, he acquired a good and legal title thereto, and any other person acquiring title through or under him also held a good and legal title thereto. *Answer:* Our answer to that is, that the only verdict that can be had here would be a verdict for an amount, the value of the piano with interest from the time it was obtained. [7]

7. If Sarah Jane Groff received the piano in suit as a gift from her father, Adam Diller, who bought the same from Wayne I. Groff, the purchaser thereof at the assignee's public sale of A. E. Groff's personal property, without knowledge or notice of plaintiff's claim of title thereto, and without knowledge of any false or fraudulent representations, if any, made by the said A. E. Groff, defendant, at or about the time he bought said piano, her title to the same is good, and the verdict of the jury must be in favor of the defendant. *Answer:* That does not necessarily follow at all, because the only verdict you can render here will be against the man on the record, Abram E. Groff, I believe it is. You cannot find against her, you cannot take the piano away from her. The only thing you can do will be if you find it was fraudulent on the part of

Abram E. Groff to find against him for its value and for the interest due on it from the time it was sold until the present time. [8]

9. If A. E. Groff, the defendant, were insolvent at the time of the purchase of said piano, that fact alone does not permit the plaintiff to rescind the contract of sale nor entitle him to a verdict in this case. *Answer :* That we fail to affirm. [9]

10. If the plaintiff attended the assignee's sale of the personal property of A. E. Groff, the defendant, and bid on said piano, running the price up to the sum of $208, by that act he not only ratified the sale thereof but treated the same as the property of the assigned estate, and he thereby affirmed the contract of sale, and is estopped from claiming ownership in the piano in suit. *Answer :* That we disallow. [10]

Verdict and judgment for plaintiff for $1,036. Defendant appealed.

*Errors assigned* were (4–7, 9, 10) above instructions, quoting them ; (12–16) rulings on evidence, quoting the bill of exceptions.

*J. W. Denlinger* and *B. F. Davis*, for appellant.—The court committed error in not leaving to the jury to decide whether notice was given at the assignee's sale by the plaintiff of his claim : Sinclair v. Healy, 40 Pa. 417 ; Root v. French, 13 Wendell, 570.

Insolvency and knowledge of it at the time of the sale are evidence to go to the jury with other facts to show intended fraud, though they are not sufficient by themselves : Rodman v. Thalheimer, 75 Pa. 232 ; Winters v. Mowrer, 163 Pa. 239 ; Reel v. Martin, 12 Pa. Superior Ct. 340 ; Smith v. Smith, Murphy & Co., 21 Pa. 367 ; Bughman v. Central Bank, 159 Pa. 94.

Gabriel Pioso and others were called by the plaintiff and appellee to show a system of fraud on the part of appellant. We objected, unless the plaintiff showed he made the purchase by false and fraudulent representations. This he did not do, and therefore we contend that such evidence improperly prejudiced the jury against us : Ralph v. FonDersmith, 3 Pa. Superior Ct. 618.

*W. U. Hensel*, for appellee.

OPINION BY WILLIAM W. PORTER, J., January 20, 1903:

This action is in replevin. The chattel taken under the writ was replaced by the bond filed by the defendant. The question to be determined was whether the plaintiff was entitled to the possession of the piano taken under his writ. If he had such right his damages would be measured by the value of the chattel at the time of its seizure under the writ.

The defendant is a farmer living about seven miles from Lancaster. The plaintiff is a dealer in musical instruments in that city. In the latter part of August, 1893, the defendant selected, in the plaintiff's store, a grand piano for $700 and a violin for $50.00. A day or two later the piano was taken to the farm, but before closing the sale the plaintiff's salesman drew from the defendant the statement that he owned his farm and that " the beauty of it was, it was paid for." This declaration of responsibility seems to have been sufficient to induce the delivery of the piano and the taking of a note for $700 for the price. Within two weeks, the defendant confessed two judgments to his father for $5,000 each and a judgment to his wife for $3,300. Upon the first judgment, execution was issued. The defendant then made an asignment for creditors. Included among the goods was the piano bought from the plaintiff. At the sale the plaintiff gave notice that he claimed ownership of the piano. The purchaser of it was a relative of the wife of the defendant. The piano was subsequently alleged to have been given to her and allowed to remain in the defendant's parlor just as it had before the sale.

The plaintiff set up fraud in the purchase and rescission of the sale, on discovery of the fraud, by notice at the sheriff's sale. The proof of fraud consisted in showing that the defendant by his statement in regard to his farm, deceived the plaintiff as to his responsibility : in showing that the defendant subsequently boasted of the deception thus practised on the plaintiff; in showing that the defendant was absolutely insolvent; that he concealed the fact of his insolvency ; in showing that he bought large quantities of goods on credit from other merchants at this particular time ; that the purchase was made as part of a scheme to increase assets to be sold under judgments

to be immediately confessed to the defendant's father and wife.

The defendant denied all allegations of fraud, trickery or intent to deceive. The court on this branch of the case, rightly relegated the question of fraud to the jury,—instructing them that if the purchase was honest and without fraudulent intent and conduct, the plaintiff could not recover, but that if the purchase was fraudulent, then the verdict should be for the plaintiff for the value of the piano.

It is true that if the plaintiff had stopped at proof of insolvency, there would not have been sufficient evidence of fraud to affect the sale. But by the other items of proof noted above, additional circumstances were exhibited which tended to show trick and artifice and conduct which reasonably involved false representation. The proof, therefore, was sufficient to take the case to the jury: Bughman v. Central Bank, 159 Pa. 94.

The defendant urged upon the court below and upon this court, principles of law which have no application to the issues involved. The paper, called by the defendant the contract of sale of the piano, was not attempted to be affected in its terms by the evidence of fraud submitted by the plaintiff. The assault was made upon the integrity of the transaction itself. Was the sale itself voided by the fraud? Was the contract of sale lawfully rescinded on the ground of fraud? These questions are not affected by authorities bearing upon the character of evidence required to affect writings or indicating the extent to which parol evidence may be accepted for such a purpose.

The defendant, however, by leave of court, filed an additional plea of property in Sarah Jane Groff, his wife. The court was asked to charge that if the piano was bought at the sheriff's sale by Wayne I. Groff without notice or knowledge of plaintiff's claim and without knowledge of fraudulent acts by the defendant, any person acquiring title from him would take a good title. The effect of this was a request to charge that the title of Mrs. Groff, who it was alleged became possessed of the piano by gift from the purchaser at the sheriff's sale, was good, and that the plaintiff's right to possession was thereby defeated. The learned trial judge went astray in his view of this branch of the case. He seems to have been diverted by the thought that the trial was between the plaintiff and defendant as for a tort,

forgetting that the real issue was the right of the plaintiff to have possession of the piano, not his right to pursue the defendant either for its price or for damages for any tort committed in connection with the purchase of the piano.

A good title shown in the defendant's wife would have defeated the plaintiff as well as a good title shown in the defendant himself : Wilson v. Gray, 8 Watts, 25. The learned judge dropped out of the trial all questions relating to the assertion of title in Mrs. Groff and erred in his answers to points and in failing to submit to the jury the question whether on the oral proof, the vendee of the sheriff took title with notice of the claim of title by the present plaintiff. It is true, that the evidence is overwhelming on this point, but as the facts of notice and knowledge are dependent on testimony, the question whether the notice was given and received should have been sent to the jury with proper instructions as to the rights of innocent third persons for a valuable consideration who might have taken title from the vendee, in ignorance of defect in title. See Levy v. Cooke, 143 Pa. 607.

From what has been said, it must further appear that the court erred in failing to affirm the defendant's ninth point which was, " If A. E. Groff, the defendant, was insolvent at the time of the purchase of the piano, that fact alone does not permit the plaintiff to rescind the contract of sale, nor entitle him to a verdict in this case."

Five or six of the assignments of error relate to the admission of proof showing acts done by the defendant contemporaneously with the purchase from the plaintiff, indicating a scheme or general purpose to procure merchandise on credit without intention or ability to pay for them and by subsequent confession of judgment, to make them liable to execution. This evidence was, speaking generally, admissible. It went towards showing the general purpose and intent of the defendant in the transaction with the plaintiff. The dealings being contemporaneous, similar in kind and having an apparent common and fraudulent purpose, were sufficient, in conjunction with evidence of gross insolvency, to subject the question of fraud and artifice to a jury.

In conclusion, attention may be called to the fact that the true measure of damages in case of a finding for the plaintiff

85, (1903).]　　　　　　　　Opinion of the Court.

would seem to be not the value of the chattel when originally sold with interest, but its value when the plaintiff became entitled to its possession by seizure under the writ of replevin.

The judgment is reversed and a venire facias de novo is awarded.