WILLIAM BURNETT and others v. THOMAS W. NICHOLSON and wife.

*Mill-Dam Act—Damages for ponding Water—Married Women —Tort—Evidence.*

In an action for damages for ponding water, it appeared that plaintiff sustained injury to his mill by reason of defendant's erecting another mill and dam lower down on the same stream ; *Held*,

(1). That the measure of damages is the value of the injury actually sustained by the plaintiff up to the time of trial, and in estimating the same, the decrease of custom (in the matter of toll) cannot be considered.

(2) Evidence to show how much it would cost the plaintiff to raise his dam and water-wheel to escape the injury complained of, was properly excluded.

(3) In the absence of an allegation in the answer raising an issue of the liability of the feme defendant, she cannot be permitted to set up her coverture as a defence to the alleged tort.

(*Hester* v. *Broach,* 84 N. C., 251; *Gillett* v. *Jones,* 1 Dev. & Bat., 339 ; *Beatty* v. *Conner,* 12 Ired., 341 ; *Whissenhunt* v. *Jones,* 78 N. C., 361 ; *Barnes* v. *Harris,* Busb., 15, cited and approved.)

CIVIL ACTION tried at Fall Term, 1880, of HALIFAX Superior Court, before *Graves, J.*

This action was brought under the statute (Bat. Rev., ch. 72) to recover damages to plaintiffs' grist mill, on Fishing creek in Halifax county, caused by the erection of a mill-dam by defendants which ponded the water back on plaintiffs' mill.

It is alleged in the complaint that the mill was built more than fifty years ago and has been in constant use, except for about a month several years since; that the defendants, or the defendant Thomas W. Nicholson as the agent of his wife, Martha E. Nicholson, are now building a mill on Fishing creek, at a point about ten hundred yards below the plaintiffs' mill, and have erected a dam about six feet high across the creek, and also an obstruction called a "float," thereby causing the water to flow back upon plaintiffs' water-wheel, lessening its rapidity and sometimes preventing it from turning at all, to the great injury of the plaintiffs. Wherefore plaintiffs ask that commissioners may be appointed under the provisions of the statute to view the premises, and assess the damages to which plaintiffs may be annually entitled.

The allegations of the complaint are substantially admitted by the answer, except that which charges that the injury to plaintiffs water-wheel is caused by the building of the dam, and this the defendants positively deny.

The plaintiffs amended their complaint—demanding damages to the amount of three hundred dollars for each year since the erection of the dam by defendants, and praying judgment for two thousand dollars and costs.

Issues submitted to the jury by the court are as follows: 1. How long had plaintiffs' mill been used by them, and those under whom they claim, before the erection of defendants' dam? Ans. One hundred years. 2. Have plaintiffs sustained damage by the erection of said dam, and if so, how much, up to the present term of the court? Ans. One hundred dollars annually (without interest) from the time of the erection of the dam by defendants.

There was much conflicting evidence as to whether the erection of the dam had caused the injury complained of, and also as to the amount of the damage sustained.

Upon the question of damages, the defendants offered to

show how much it would cost the plaintiffs to raise their dam and water-wheel, so as to relieve them of the water ponded back by reason of defendants' dam, but upon objection this was ruled out, and defendants excepted.

The court instructed the jury that the measure of damages would be the injury actually sustained by plaintiffs, up to the trial, and that in estimating the same, they could not take into consideration the diminution of toll on account of decrease of custom caused by erecting a mill near the plaintiffs'.

The plaintiffs moved for judgment against the separate estate of the feme defendant, which was allowed. Verdict and judgment for plaintiffs, appeal by defendants.

*Messrs. J. B. Batchelor* and *Spier Whitaker,* for plaintiffs.
*Mr. Walter Clark,* for defendants.

SMITH, C. J. Upon the question of damages caused by the dam built below the plaintiffs' mill and the increased accumulation of water upon their water wheel from this obstruction to its flow, interfering with the working of the mill, the jury were directed, and the issue was so framed as to call for this response, to inquire and ascertain the annual damage from the time of the erection of the dam up to the trial; that the measure thereof was the value of the injury sustained by the ponding back of the water upon the mill; and that in making their estimate, they should not consider the loss of toll resulting from the near presence of the new mill put up by the defendants, and the consequent diminution of patronage. The defendants had offered, and not been allowed, to introduce testimony to show at what expense the plaintiffs' mill could be so altered as to lift their water wheel above the increased volume of water and prevent injury therefrom.

The jury assessed the damages for no fixed period, but at one hundred dollars for each year.

The defendants objected to the rendition of judgment for damages accrued since the commencement of the action, and for any sum against the feme defendant because of the presumed coercion of the husband in causing her to commit the alleged tort. The court gave judgment against both defendants, and against the separate estate of the feme, for the sum of five hundred dollars. These are the assigned errors appearing in the record, and requiring a review.

1. The rule of damages was correctly explained, and the court properly refused to hear evidence not bearing upon the question of the extent of the actual injury caused by the obstruction placed in the stream. It was not less the direct result of the defendants' wrongful act, and for which they are responsible, that the plaintiffs could have reconstructed or so changed their mill as to have prevented further injury at an expense less in amount than the damages sustained. The instruction was as favorable to the appellants as they could ask, and their counsel does not press that point in the argument before us.

2. The defendants insist that the judgment should be for such damages only as were sustained up to the commencement of the suit, and for none accruing afterwards. If this is the correct rule, its requirements could be easily met by deducting from the sum recovered the part accruing during the interval, upon the basis of an estimate at the rate of one hundred dollars per annum, and entering judgment for the residue. With this deduction there would remain but about seven months preceding the action, of the five years covered by the judgment given, and the share can be readily ascertained.

Some confusion in determining the present status of the law in regulating proceedings of this kind is produced by the amendatory act of 1877, which repeals a part, and

leaves in force other sections of the previous statutes which relate to the same subject, and are inter-dependent one upon the other. The apparent repugnancy between the amendments and the sections retained is pointed out in the recent case of *Hester* v. *Broach*, 84 N. C., 251, by Mr. Justice ASHE, the removal of which seems to require the correcting hand of the law-making power.

Assuming, as we must, from the record, that *actual* and not *prospective damages*, have been assessed, and none are adjudged which did not in fact accrue before the trial, the question is, whether the plaintiffs in this action are entitled to compensation for the continual injury sustained up to the trial, as well for that done since as before the institution of their suit. The point is not disposed of in *Hester* v. *Broach*, and now requires a decision from us.

In *Gillett* v. *Jones*, 1 Dev. & Bat., 339, where the act of 1809 was carefully examined and construed, a verdict in the superior court to which the case had been removed by appeal, was rendered for fifty dollars as the annual damage, and seven years had elapsed from the point of time to which the damages related, and judgment was given for five several sums of fifty dollars and up to the time when the injury ceased. This judgment was affirmed.

Delivering the opinion, the eminent Chief Justice who for so long a period presided over this court, and in a large degree shaped the jurisprudence of the state, thus expounds the statute: "The fifth section is a provision altogether for the benefit of the plaintiff, which gives him the election of the statute remedy for the *whole injury*, or of that remedy for the damages of one year, and that of the common law for the residue. It is in the nature of a proviso to the previous enactment, that the judgment shall be binding for five years, and declares that notwithstanding that enactment, 'the person injured shall not be prevented from suing' at common law, when the damages shall be found as high as

twenty dollars. When that happens, the party shall not be prevented from recurring to his ancient remedy; that is to say, he shall be at liberty to do so, 'and in such cases the verdict and judgment shall only be binding for one year.' '*In such cases*' does not mean those merely in which the damages have been assessed to twenty dollars; but those in which that has taken place; and also, the plaintiff using the liberty allowed by the act, *sues* '*as has heretofore been usual.*' Then and in that case the verdict shall not conclude. But if the plaintiff chooses not to sue at common law, then *it is conclusive.*"

And so PEARSON, J., says in *Beatty* v. *Conner*, 12 Ired., 341, that "where the second statute allowed an appeal to the superior court and a trial at bar, under which the proceedings would most usually be pending for several years, there was then no reason why the jury should not find the actual damages up to the time of the trial."

While the section directing an assessment for the space of five years from the date of the summons to the finding between the parties, if the mill is so long kept up, unless the damages shall be increased by raising the water or otherwise, is repealed (Bat. Rev., ch. 72, § 15) by the act of 1877; yet, as is said in *Hester* v. *Broach*, the assessment of *annual damages* is recognized in the unrepealed parts of the former law, without the limitation to the period of five years, and hence we interpret the law as admitting the assessment up to the time when the cause is determined. No reason has occurred to us why, in a proposed change in the mode of procedure which is contemplated by the act of 1877, this feature in the original law, commending itself for its many advantages, should be deemed to have been stricken out, in the absence of any express provision to that effect, or from which such legislative intent can be reasonably inferred. The damage is continuous and proceeds from the same unlawful cause; and why should the injured

party be driven to successive actions for a redress which could as easily be afforded in a single action? This, it is held, can be done in actions for the recovery of land and the damages for the wrongful withholding; and why not in a proceeding for a continuing injury like the present? In *Whissenhunt* v. *Jones*, 78 N. C., 361, the plaintiff was permitted to recover his damages for the wrongful withholding of possession of his land, up to the time of trial, and upon an exception to the ruling by which this was allowed, BYNUM, J., speaking for the court, declares that " the purpose of the Code in actions of this nature, *as it is in all others*, is, that a complete determination shall be made of all matters in controversy, growing out of the same subject of the action," and that the action "would fall short of that consummation, if the plaintiff could only recover damages up to the commencement of the action, and should be put to another action to recover the damages sustained subsequently, but before the time of trial."

3. The defendants' counsel further excepts to the rendition of any judgment against the feme defendant, and refers to numerous authorities to show that a married woman, uniting with her husband in committing a tort, is presumed to be acting under his influence, and is not civilly responsible for the act. The cases cited fully sustain the proposition; and if in a controversy as to her personal legal liability, the facts had appeared, it would have been the duty of the court so to instruct the jury. But no issue to raise this question was submitted and no evidence offered upon the point. The complaint avers that the defendants, or the defendant Thomas W., as the agent of the other defendant, were then building the mill and had already constructed the dam by which the plaintiffs' mill suffered injury; and the defendants both admit in their answer that they have erected the dam, and are preparing to put up their grist mill; and no question is made of the civil res-

ponsibility of each for the alleged tortious act. It must be then understood that an equal and common liability rests upon both, and so no issue was eliminated from the pleadings admitting evidence to exempt the feme defendant by reason of her coverture and want of freedom in the act. Although coercion is *presumed it may be disproved.* " Coverture does not deprive the wife of her capacity," remarks an eminent author, " to commit crimes and civil torts. Coverture with actual or presumed coercion by the husband does, but not coverture alone." 2 Bish. Mar. Wo., §.703. " A wife, like any other individual, is liable to be sued for a civil wrong committed by her on a third person, when she acts freely, and not under what the law deems to be a coercion from her husband." *Ibid.*, § 905.

Trespass lies against both husband and wife for an assault by both; or for a trespass to the plaintiff's goods by both. Brown Act. at Law (43 Law Lib.) 249.

In *Barnes* v. *Harris*, Busb. 15, an attempt was made to hold a married woman personally responsible for the misuse of a horse bailed to her husband and driven by her, and NASH, C. J., says: " It is sought to subject her, by deserting the contract and suing in tort, upon the ground that a feme covert is answerable for her own personal trespasses, &c. The principle is correct in the abstract, and if the facts set forth in the case amounted to such a trespass on her part, then the suit is properly prosecuted against her." As the feme defendant may commit a tort, and render herself personally liable, the defence arising out of her coverture and the presumed want of freedom to act, should have been made in the answer, and thus an issue presented in which the facts of the matter could be ascertained and her legal liability determined. The admission of the plaintiffs' charge, that she did the act complained of, is an admission of its legal consequences, and it is too late to make the objection, after all disputed matters have been settled by the verdict.

It cannot now be assumed that the attending circumstances, if developed, would not show a case of personal liability, and it is enough to say that no personal exemption of either was relied on in answer to the action.

There is no error, and the judgment must be affirmed, and it is so ordered.

No error.                                                    Affirmed.