*JOSEPH BLAKE AND WIFE et al. v. J. C. BLACKLEY.

*Contract—Evidence—Fraud.*

1. If one induces another to part with the possession of his property by
   a promise to pay cash for it upon delivery, and by the exhibition
   of apparent resources to pay the purchase-price, when, in fact, he
   did not intend to pay the money, but did intend, after getting
   possession, to credit the amount upon a debt held by him against
   the owner, the contract is voidable, at the election of the vendor,
   and he may maintain an action for the recovery of the specific
   property agreed to be sold.

2. A creditor will not be permitted, by the practice of a fraud, to acquire
   title to the property of his debtor for the purpose of the satisfac-
   tion of his debt.

3. In such case, testimony that the defendant represented that he in-
   tended to pay cash for the property; that he had a check on a,

neighboring bank which would be paid next day, and that, after getting possession of the property, he endeavored to put it out of the reach and conceal it from the vendor, is evidence of the fraudulent intent.

CIVIL ACTION, tried at April Term, 1891, of WAKE Superior Court, before *Winston, J.*

The plaintiffs brought their action to recover two horses and one set of harness, valued at three hundred dollars, and by claim and delivery proceedings took possession of the property sued for soon after the action was brought in June, 1890.

There was evidence tending to show that the *feme* plaintiff and George W. Wynne, a co-plaintiff, early in the year 1890 entered into an agreement to engage in the business of buying and selling horses in the city of Raleigh, the *feme* plaintiff furnishing the money and Wynne contributing his time and personal attention to the business, for which he was to receive one-half of the clear profit; that shortly thereafter the defendant entered into negotiations with Wynne for the purchase of two horses and harness, the property of the plaintiffs, the defendant representing that he intended to pay cash, and exhibiting a check on a bank in Raleigh, which he alleged would be cashed on the opening of the bank next day; that during the negotiations Wynne told the defendant the horses were his, but theretofore told him that his co-plaintiff had an interest in them, and that defendant had knowledge of this fact. The trade was concluded late in the day; when defendant desired to take the property from plaintiffs' stables, but this was declined by Wynne, who said he would keep them until next morning. When Wynne returned to the stables next morning, defendant had taken the property and sent it away; thereupon, being called upon to make payment, he presented a note to himself, executed by Wynne for $250, and some cash, representing the differ-

ence between the amount of the note and the purchase-price. Wynne refused to accept the payment thus offered.

There was also evidence tending to show that defendant declared he was going to "work a little scheme on Wynne;" and, afterwards, when he was asked by the husband of the *feme* plaintiff what he had done with the horses, said he "had run them out of her reach."

There was further evidence that, after getting possession of the horses in the early morning he had started them in the direction of his home, in an adjoining county, by the usual route, but after going a short distance had changed them to another road. It was admitted that defendant had no money in the bank in Raleigh at that time.

At the close of the evidence, and before his Honor charged the jury, the defendant prayed for the following instruction, "Upon the whole evidence the plaintiffs are not entitled to recover," which his Honor refused to give and defendant excepted, but charged the jury as follows: "If George W. Wynne was drawn in to part with the property described by fraudulent misrepresentations or concealments of facts on the part of Blackley, material to the contract and operating as inducements thereto, and they were such as a man of ordinary sagacity might reasonably rely on and be influenced by, and such owner or owners did rely on and were influenced by them in making said contract, then such trade was voidable and the owner, or owners, of the property have the right to annul the contract and sue for the recovery of the same; and if the jury believe that the defendant went to Wynne and falsely and fraudulently represented to him that he had the money with which to pay for the horses and harness and would pay cash for the same, when in truth and in fact he did not have such money, and did not intend to pay cash for the same, and if the jury believe further that the defendant went to the bank to collect money, intending thereby to deceive the said Wynne, and to lead him to

believe that he would pay for said horses with money drawn from said bank, when in truth he did not intend at said time to use such money to pay cash for said horses; and if the jury believe from all the other facts and circumstances of this case that the intent of Blackley was to deceive said Wynne and to fraudulently induce him to part with the possession of said property by making false statements, or by concealing facts, and because of such false and fraudulent representations and concealments, said Wynne did part with said horses, then, in law, such a fraud would have been perpetrated on said Wynne that no title passed to Blackley, and you will answer the second issue, Yes.

"The jury will consider, in this connection, all the evidence as you remember it; the early departure next morning and the argument of defendant's counsel that this was because of hot weather; changing the direction that the horses had started; the declarations made to Holder that he intended to work a trick on Wynne, and Holder's reply that Mrs. Blake owned the horses, and all the other evidence in the case.

"On the other hand, if the evidence has not led your minds to the conclusion that Blackley did falsely and fraudulently represent that he had the cash with which to pay for said horses and with which he would pay for same, and that his intention was to defraud and deceive said Wynne, then you will answer the second issue, No."

On the first issue the Court charged: "That if Mrs. Blake furnished the money with which to buy the horses, and with which the horses were bought, Mrs. Blake to pay the expense of feeding and also the rent, Wynne to buy any horses in his own judgment, and also to sell the same, and Wynne to have one-half the profits, then you will answer issue, Yes; but if Mrs. Blake did not furnish such money, and if the said horses really belonged to Wynne, then you will answer the first issue, G. W. Wynne alone.

"On the third issue, if evidence is believed, you will answer $300."

The issues and responses were as follows:

1. Were the plaintiffs, Lucy A. Blake and George W. Wynne, entitled to the possession of the horses and harness mentioned in the complaint on 7th July, 1890?

Answer—Yes.

2. Did the defendant J. W. Blackley obtain possession of the horses and harness by false and fraudulent representations?

Answer—Yes.

3. What damage did Lucy A. Blake and G. W. Wynne sustain by the taking of the horses and harness?

Answer—Three hundred dollars.

The defendant moved for a new trial, and assigned as grounds therefor—

1. The refusal of his Honor to give the instruction prayed.

2. For a variance in the allegations in the amended complaint and the evidence, the complaint setting up a co-ownership in the property in the plaintiffs Lucy A. Blake and George W. Wynne, and the evidence showing that said parties were copartners.

3. That from the evidence it appeared that Mrs. Lucy A. Blake was a married woman at the commencement and trial of this action, and that the business connection between herself and George W. Wynne was formed and conducted for the sole purpose of trading in horses, such business connection, defendant contended, was contrary to the policy of the law.

4. That there was no evidence to show that defendant Blackley did not have money with which to pay for the property mentioned in the complaint, the evidence being (by admission) that he had no money deposited in any bank in Raleigh to his credit, but it being proved that he had in

his possession a check for money which he showed to Wynne when he said he was going to the bank to get money.

Motion for new trial refused, and judgment being rendered for plaintiffs, the defendant excepted and appealed.

*Messrs. John Devereux, Jr.,* and *S. G. Ryan,* for plaintiffs.
*Mr. N. Y. Gulley,* for defendant.

AVERY, J.: The main question raised by the appeal is whether, upon the whole of the evidence, in any phase of it, and in the particular aspects presented by the Judge below to the jury, the plaintiffs were entitled to recover.

The mere fact, if admitted, that the defendant told a falsehood, or made a promise to pay at a time when he knew he would not, in all reasonable probability, be able to pay, would not invalidate the sale. But, if one induces another to part with his goods by a promise to pay cash for them on the same day, showing a check to inspire confidence in his engagement, when, in fact, he does not intend, at the moment of making the representation, to pay for the property in money at any time, but purposes, after getting possession of it by holding out the hope of the immediate receipt of ready cash, to credit its value on a claim held by him against the owner or one of the owners of it, the contract is fraudulent and voidable, at the instance of the original owner, and where the owner has been induced to surrender the possession, he may maintain an action in the nature of *detinue,* and recover the specific property, if to be found, or in the nature of *trover* for the wrongful conversion, consummated by the refusal to surrender it on demand. Bishop on Contract, § 667; Benjamin on Sales, § 656 and note 18; *Smith* v. *Young,* at this term; 8 Am. and English Enc., 650; *Donaldson* v. *Farwell,* 93 U. S Rep., 631.

The representation of the defendant, if the testimony was believed, that he wished to start the horses in the early

morning while it was cool, and transferring them from the road ordinarily traveled to his home from the place of purchase to another way not so well known, in connection with the declaration made to a witness before he had acquired possession of them, that he intended to play a trick on Wynne, were sufficient to warrant the verdict. It was the duty of the Judge to submit this testimony with all of the circumstances, and let the jury pass upon the intent of the defendant, and the defendant has no just ground to complain that the language in which his Honor couched the proposition was such as might have misled the jury to his prejudice.

Whether the declaration of the defendant was drawn out by a direct question or whether made gratuitously, the object in telling Wynne that he had money in the bank and exhibiting a check, was to induce Wynne to surrender the property before it was paid for, and ultimately to avoid paying for it, and, therefore, the false representation, which the jury find misled Wynne and caused him to part with the horses before receiving the purchase-money, vitiated the contract *ab initio* at the option of the injured party to be exercised within a reasonable time. *Wilson* v. *White*, 80 N. C., 280; *Donaldson* v. *Farwell, supra.* In this view of the case it is immaterial whether the property belonged to the *feme* plaintiff or to her and Wynne as partners, or to Wynne individually. A creditor is not allowed, by practicing a fraud, to acquire title to the property of his debtor, even with the purpos ᐧ of crediting its value on a just debt. *Smith* v. *Young, supra.* If the law should give its sanction to the wrongful conversion of property, whether by force or fraud, for the purpose of collecting even undisputed debts, the end would not justify the means, either legally or morally.

There was evidence tending to show that the defendant exhibited a check for which he declared that he could not get the cash in the afternoon or evening before, because the banks of the city of Raleigh were closed, and that he would

get the cash for it on the morning following so soon as the banks should be opened. It was not material whether his language was such as to convey the idea that his money was on deposit in a Raleigh bank or elsewhere. The gravamen of the fraud was in falsely and wilfully creating the impression on the mind of Wynne that he had money which could be procured by means of a check, and which he would apply in payment for the horses, when, in fact, the defendant's purpose was to acquire possession of the horses and to credit the value, with or without the assent of Wynne, on a debt which Wynne owed him.

Another exception made by the defendant seems to be founded upon the theory that because a married woman is not a free trader and has no power to bind her separate property by a contract, she has no right to acquire property by purchase or to maintain (even when her husband is joined) an action for the wrongful withholding of it after she has acquired it. "It is settled law in North Carolina that our statutes (*The Code*, ch. 47) impose no limit upon the wife's power to acquire property by contracting with her husband or any other person, but only operate to restrain her from or protect her in disposing of property already acquired by her." *Osborne* v. *Wilkes*, 108 N. C., 667; *Battle* v. *Mayo*, 102 N. C., 439; *George* v. *High*, 85 N. C., 99; *Kirkman* v. *Bank*, 77 N. C., 394; *Dula* v. *Young*, 70 N. C., 450; *Stephenson* v. *Felton*, 106 N. C., 121.

For the reasons given, we think there was no error in the rulings of the Court below, which constitute the grounds of exception, and the judgment must be affirmed.

No error.