## ISAAC E. LEVY v. ROBERT COOKE, JR.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF CENTRE COUNTY.

Argued April 22, 1891—Decided October 5, 1891.

(a) The vendors of goods, because of fraudulent representations by the vendee by means of which he had obtained possession, elected to treat the sale as void, and caused the goods to be replevied from the vendee's bailee. Prior to the replevin, the vendee had made a bill of sale of the goods to a stranger.

(b) In trespass by the second purchaser against the sheriff for the seizure made by the latter, the plaintiff, declaring upon his title to the goods as a bona-fide purchaser thereof for value from the original vendee, introduced testimony to prove when and how he had purchased and paid for them:

1. In such case, it was error to exclude the offer of the defendant to show the false and fraudulent representations, whereby the original vendee had obtained possession of the goods from his vendors, so as to cast upon the plaintiff the burden of showing himself a purchaser without notice of the fraud.

2. It was error to assume that by the plaintiff's testimony the bona fides of his purchase was already established. At best, the plaintiff's evidence tended only to make out a prima-facie case; the jury had not yet passed upon it, and it was for them to determine the question upon all the evidence on both sides.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Statement of Facts.

On December 21, 1888, Isaac E. Levy brought trespass against Robert Cooke, Jr. Issue. ·

At the trial, on February 3, 1891, before FURST, P. J., the plaintiff submitted testimony showing that on July 30, 1888, Max Levy executed and delivered to him a bill of sale of personal property, consisting of horses, harness, covered wagon, with a stock of dry goods contained in said wagon; also two cases of blankets and ladies' clothing belonging to him, "and now in the care of Mr. McCormick, the blacksmith, at his wagon-shop in Philipsburgh, Pennsylvania;" that the plaintiff, as the consideration of said bill of sale, paid to Max Levy $150 in cash, in the presence of counsel who drew the paper, and at the same time canceled an indebtedness of Max Levy for $350 for goods previously sold to the latter. Max Levy testified that the bill of sale was executed on the day it bore date in good faith; that the sale was a real, genuine sale; that he did not think Isaac E. Levy knew the witness owed anything for any of the personal property mentioned in the bill of sale; that he had bought only about $370 or $400 worth of goods from Wood, Brown & Co., and after receiving them he sent Wood, Brown & Co. a check for $100 which was paid; and that when he gave the bill of sale he had enough to pay all bills against him. The witness and the plaintiff were not related. The plaintiff then gave in evidence a writ of replevin, Wood, Brown & Co. v. Max Levy, and showed that the defendant, as the sheriff of the county, on August 24, 1888, replevied the goods in dispute in McCormick's blacksmith shop, or rather in a warehouse to the rear of the shop, the defendant stating at the time that he was indemnified by Wood Brown & Co., to whom the goods were afterward delivered. It appeared that the goods and other property had been turned over to McCormick as collateral security to protect him as bail for Max Levy's appearance to answer to a criminal charge. The plaintiff was not called as a witness in his own behalf, and no testimony was given as to the circumstances under which the goods in dispute were obtained from Wood, Brown & Co., except that they were bought and when.

Statement of Facts.

The plaintiff having rested, the defendant moved for a nonsuit for inter alia the following reasons:

2. Because the plaintiff's testimony fails to show that there was such a transfer of title to the goods, from Max Levy to Isaac E. Levy, as to entitle the said Isaac E. Levy to recover in this action.

3. Because the testimony on the part of the plaintiff shows that the goods were transferred by Max Levy to the possession of E. P. McCormick, who held them as bailee for Max Levy, and as an indemnity for his appearance to answer charges in a criminal prosecution in Huntingdon county.

4. Because the testimony of the plaintiff shows that there was no transfer of said property from E. P. McCormick, as bailee, or otherwise to Isaac E. Levy, but that the same were in possession of E. P. McCormick at the time of the issuing of the writ of replevin.

5. Because, under all the evidence, the plaintiff is not entitled to recover.

By the court: Motion refused.[1]

The defendant, being required to state his case, made the following offer:

Defendant in this case offers to prove by the deposition of James A. Campbell, the credit manager of the firm of Wood, Brown & Co., doing business in the city of Philadelphia, that on or about the eighteenth day of July, 1888, Max Levy came into the store of Wood, Brown & Co. and met the credit manager, James A. Campbell, and asked to purchase goods; that a conversation took place in which Max Levy made known that he desired to buy a quantity of goods from Wood, Brown & Co.; that, upon inquiry on the part of James A. Campbell, Max Levy represented that he was the owner of a store in the town of Clearfield, worth $2,000, and that he had no debts whatsoever, and upon the strength of these representations a credit was extended to Max Levy amounting to some $400 or $500; that, upon the strength of his representation, these goods were packed and shipped to Philipsburgh borough, at the request of the said Max Levy; that, after the goods were shipped, knowledge was brought to the attention of Wood, Brown & Co. that Max Levy did not own a store in Clearfield town; that he was indebted in large amounts in different counties

Statement of Facts

in the state of Pennsylvania; that he had perpetrated frauds of similar character upon merchants of Huntingdon county, Lycoming county, Berks county, and other counties in the state of Pennsylvania; that on the judgment docket of the Court of Common Pleas of Clearfield county there was a large number of judgments, amounting to many hundreds of dollars, unsatisfied; that afterwards, on account of these representations, Wood, Brown & Co. instituted an action of replevin and issued a writ in replevin for the recovery of these identical goods which he purchased from them, and they, by virtue of this writ of replevin, had the sheriff seize these goods while in the possession of. E. P. McCormick, the bailee of Max Levy, who then and there delivered them to the sheriff, for Wood, Brown & Co., and he forwarded them to Philadelphia, where they were delivered to Wood, Brown & Co.: This for the purpose of showing a fraudulent intent on the part of Max Levy in purchasing these goods; the goods being sold on the strength of these representations, the title did not pass to Max Levy, but remained in Wood, Brown & Co. Defendant further adds to the offer that at the same time Max Levy committed this fraud upon Wood, Brown & Co. he was carrying on a system of fraud of like nature in different counties in the state of Pennsylvania.

Plaintiff's counsel object: (1) For the reason that the deposition of James A. Campbell, referred to, does not show any such state of facts as that incorporated in the defendant's offer. There is no representation that he has a store in Clearfield, or in any other place; and the deposition does not show that any evidence of fraud was brought to the attention of Wood, Brown & Co. or misrepresentations; nor is there any evidence in the case to show that any misrepresentations were alleged until long after the bringing of this suit. (2) It is not indicated in what manner the attempt will be made to show that frauds were practised by Max Levy upon any other person or persons. (3) It is not offered to be shown that Isaac E. Levy, the plaintiff in this suit, is in the slightest degree connected with any fraudulent acts of Max Levy; and, under the undisputed testimony of the plaintiff, showing that the transaction between Isaac E. Levy and Max Levy was bona fide, and without any knowledge of any bad faith on the part of Max Levy

toward Wood, Brown & Co., or towards any other person, the title of Isaac E. Levy cannot be affected by the testimony proposed to be shown; and it is not proposed to be shown that he was in any way connected with any of these alleged frauds, or had knowledge of them, and all the testimony upon that subject was of a purchase in good faith for a valuable consideration and without notice.

By the court: If all the facts contained in the offer were true, there is no offer of evidence to impeach the bona fides of the sale from Max Levy to Isaac E. Levy, made on July 30, 1888, and it would be immaterial in this issue. The defendant not undertaking to impeach the integrity of that sale, but simply offering to show fraudulent circumstances under which Max Levy originally bought the goods, we think the offer fails to meet the issue now before the jury; we therefore exclude this offer and seal a bill for the defendant.[2]

—No further testimony being offered, the case was submitted to the jury, who returned a verdict in favor of the plaintiff for $360.38. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1. The refusal of the motion for a nonsuit.
2. The refusal of the defendant's offer.[2]

*Mr. Isaac S. Sharp* (with him *Mr. S. H. Alleman, Mr. Clement Dale, Mr. George W. Zeigler* and *Mr. W. F. Reeder*), for the appellant.

Upon the first assignment, counsel cited: Trunick v. Smith, 63 Pa. 18; Worman v. Kramer, 73 Pa. 378; Woods v. Hull, 81* Pa. 451. Upon the second assignment: Neff v. Landis, 110 Pa. 204; Lowe v. Dalrymple, 117 Pa. 564; Snyder v. Berger, 18 W. N. 490.

*Mr. D. S. Keller* (with him *Mr. Wm. Bryson*), for the appellee.

That a sale of personal property in the hands of a bailee is valid as against creditors, though there be no actual delivery, counsel cited: Linton v. Butz, 7 Pa. 89; Roberts v. Guernsey, 3 Gr. 237; Woods v. Hull, 81* Pa. 451; Benj. on Sales, 6th Am. ed., §§ 319, 333. That the refusal of a nonsuit is not as-

signable as error: Easton Bor. v. Neff, 102 Pa. 476. That, where there has been a sale and delivery of chattels, the title passes to the vendee, and they may be sold to a bona-fide purchaser, whether they have been paid for or not: Rose v. Story, 1 Pa. 196; Martin v. Mathiot, 14 S. & R. 214; Haak v. Lindeman, 64 Pa. 499; Stadtfeld v. Huntsman, 92 Pa. 53; and the purchaser for a valuable consideration will not be prejudiced by the fraud of him from whom he purchased of which he had no notice: Thompson v. Lee, 3 W. & S. 479; Sinclair v. Healy, 40 Pa. 418; 1 Benj. on Sales, 570.

OPINION, MR. JUSTICE STERRETT:

There are only two specifications of error in this case. As to the first, it is scarcely necessary to repeat, what has been heretofore so often said, that the refusal of the court to enter a judgment of compulsory nonsuit is not assignable for error: Easton Bor. v. Neff, 102 Pa. 474; and cases there cited. The second is the rejection of defendant's offer, which, with the objections thereto and ruling of the court thereon, are fully set forth in the specification.

The bearing of the proposed evidence will be better understood by premising that this is an action of trespass brought by Isaac E. Levy against Robert Cooke, Jr., sheriff, etc., to recover damages for taking and carrying away goods claimed by plaintiff as his property. The taking by defendant, as sheriff of the county, consisted in his executing a writ of replevin at the suit of Wood, Brown & Co. against Max Levy, and delivering the goods in controversy to the plaintiffs in the writ. As the basis of their action, Wood, Brown & Co. alleged that Max Levy procured the goods from them by false and fraudulent representations, and hence they elected to avoid the sale, and repossess themselves of the fraudulently obtained property by replevying the same. The offer was mainly to show that Max Levy was a fraudulent vendee of the goods in controversy. The plaintiff, Isaac E. Levy, asserted title to the goods as a bona-fide purchaser for value from Max Levy, before the writ of replevin was issued, and without notice of any fraud practiced by Max Levy, or any one else, and introduced testimony to prove when and how he purchased and paid for the goods. It was incumbent on him not only to show title to

the goods, but also actual possession, or the right to immediate possession flowing from the right of property in the goods. Whether he succeeded in doing this was a question for the jury, under all the evidence bearing on the transaction. Having rested his case upon the evidence introduced by himself, as to his purchase from Max Levy, etc., the plaintiff claimed that he was entitled to recover. The offer under consideration was then made by defendant for the purpose of showing that Max Levy's title was at least voidable, because of the false and fraudulent representations made by him in obtaining the goods from Wood, Brown & Co., under whom the sheriff defended.

The reasons given by the learned judge for excluding the testimony are as follows: "If all the facts contained in the offer were true, there is no offer of evidence to impeach the bona fides of the sale from Max Levy to Isaac E. Levy, made on July 30, 1888, and it would be immaterial to this issue. The defendant not undertaking to impeach the integrity of the sale, but simply offering to show fraudulent circumstances under which Max Levy originally bought the goods, we think the offer fails to meet the issue now before the jury."

In this we think there was error. The plaintiff having been permitted to introduce evidence tending to make out a prima-facie case, it was clearly proper for the sheriff, defending under the alleged superior title of Wood, Brown & Co., to present his side of the contention, by showing, if he could, that Max Levy was a fraudulent vendee of the property, and that his (defendant's) vendors, Wood, Brown & Co., had elected to avoid the sale and resume possession of their property; thus casting upon the plaintiff the burden of showing that he was in fact a bona-fide purchaser for value from Max Levy before the writ of replevin issued, and before he had any notice of the alleged fraud. The learned judge in his ruling intimates that the bona fides, etc., of plaintiff's purchase was already established; but in that he was mistaken. At best, the plaintiff's evidence tended only to make out a prima-facie case. The jury had not yet passed upon it. It was for them, after hearing all the evidence on both sides, to determine the facts. The credibility of the witnesses was exclusively for them. The rejected evidence tended to impeach the integrity of Max Levy's alleged sale to the plaintiff, and cast upon him the burden of proving the bona fides of the transaction.

Tested by the principles applicable to purchases from fraudulent vendees, the ruling was erroneous. When goods are obtained from their owner by fraud, it is necessary to inquire whether the facts show a *sale* to the party guilty of the fraud, or a mere delivery of the goods into his possession, induced by fraudulent devices on his part. If the owner intended to transfer the property in the goods, as well as their possession, the transaction is a sale, and the property passes, however fraudulent the device may have been; but, if he intended to part with nothing more than the bare possession, there is no sale, and no property passes. In the former case, the contract is not void ab initio, but voidable at the election of the vendor. Such voidable contracts may be affirmed and enforced, or they may be rescinded by the vendor, at his election; but in the meantime, and until he does elect, if his vendee transfers the goods, in whole or in part, to an innocent third person for a valuable consideration, the right of the original vendor will be subordinate to that of such innocent third person: Benj. on Sales, §§ 648, 649. The generally accepted doctrine is that a bona-fide purchaser, for valuable consideration, without notice of fraud, from one who had fraudulently obtained both possession and property, will be protected; but mere possession, such as that of a bailee or of a thief, will not enable a purchaser to acquire title, although he buys in good faith and pays full value: Sinclair v. Healy, 40 Pa. 417; Rowley v. Bigelow, 12 Pick. 307, 312; Hoffman v. Noble, 6 Metc. (Mass.) 68; Easter v. Allen, 8 Allen 7; Paddon v. Taylor, 44 N. Y. 371; Stevens v. Brennan, 79 N. Y. 254. In the latter case it is said: "In a suit by the true owner to recover the goods against a person who claims title under the fraudulent vendee, the burden is upon the party claiming such title, of proving that he is a purchaser in good faith and for value." It is also held in that, as in other cases, that "a transfer of goods by a fraudulent purchaser, as security for or in payment of a precedent debt, does not make the transferee a bona-fide purchaser, within the rule, so as to enable him to hold the goods against the original vendor. There must be a fresh consideration at the time of the transfer, to confer a good title as against the true owner."

In any aspect of the case, we think the proposed evidence should have been received. It was a necessary part of the

sheriff's defence to show that Max Levy was a fraudulent vendee of the goods he procured from Wood, Brown & Co., and that they, therefore, had a prima-facie right to take them on the writ of replevin. If that had been shown to the satisfaction of the jury, the next question, under the evidence, would have been the bona fides of plaintiff's alleged purchase from the fraudulent vendee; and as to that the burden would have been on the plaintiff to establish all the facts necessary to constitute a bona-fide sale and delivery of the property, for a valuable consideration and without notice.

> Judgment reversed, and a venire facias de novo awarded.