# W. R. DITTON v. ED. PURCELL.

(36 L.R.A.(N.S.) 149, 132 N. W. 347.)

**Sales — Fraud — Rescission.**

1. A purchase of personal property with the undisclosed intent to not pay the purchase price is a fraud upon the seller, for which he may within a reasonable time rescind the sale and retake possession of the property sold.

**Sales — Fraud.**

2. The giving of a false and fraudulent check in payment of the purchase price of personal property, with the intent that, after obtaining possession of the property by such means, the notes of the seller barred from collection by bankruptcy would be offset against the purchase price, without the consent of the seller, or a discount from the purchase price forced in settlement, is a fraud on the seller, for which he may rescind the sale and recover his property.

**Sales — Fraud — Rescission.**

3. Such a fraudulent sale passes to the defrauding purchaser a title voidable at the option of the seller, if rescinded with reasonable promptness after discovery of the fraud.

**Sales — Fraud — Bona Fide. Purchaser — Burden of Proof.**

4. A bona fide purchaser of personal property from such fraudulent original purchaser may secure perfect title to the property so purchased. But, his vendor's fraudulent acquisition of the property being once established, the burden is on the subpurchaser to prove his good-faith purchase without knowledge of fraud or acts imputing notice sufficient to put the subpurchaser on inquiry as to

the fraud of his vendor; otherwise he takes no title superior to that possessed by his vendor, a voidable one at the option of the original seller. After proof of the fraud of the buyer in the original sale, the burden is not on the seller to further prove the weakness of the subvendee's title, by showing his fraudulent purchase or his purchase with notice of his vendor's fraud.

**Appeal and Error — Objection in Court Below — Amendment.**

5. Where trial is had and judgment entered on findings sufficient to sustain such judgment, this court will not on appeal review the sufficiency of the pleadings unchallenged in the court below, when such defects could have been remedied by amendment, had suitable objection been made at the trial.

Opinion filed July 26, 1911.

Appeal from District Court, Grand Forks county; *Templeton,* Judge.

Action by W. R. Ditton against Ed Purcell. From a judgment for plaintiff, defendant appeals.

Affirmed.

*George A. Bangs,* for appellant.

Ostensible ownership acquired by fraud, until rescission, is an ownership that can pass title to a bona fide purchaser for value without notice. 24 Am. & Eng. Enc. Law, 2d ed. 1165–1166; 4 Am. & Eng. Enc. Law, Supp. 2d ed. 751; 5 Am. & Eng. Enc. Law, Supp. 2d ed. 1715; Cochran v. Stewart, 57 Minn. 499, 59 N. W. 543; Michigan C. R. Co. v. Phillips, 60 Ill. 190; Young v. Bradley, 68 Ill. 553; Comer v. Cunningham, 77 N. Y. 391, 33 Am. Dec. 626; Parker v. Baxter, 19 Hun, 410; Tetrault v. O'Connor, 8 N. D. 15, 76 N. W. 225; Hoffman v. Noble, 6 Met. 68, 39 Am. Dec. 711; Shufeldt v. Pease, 16 Wis. 659; White v. Dodge, 187 Mass. 449, 73 N. E. 549; Gardner v. Beacon Trust Co. 190 Mass. 27, 2 L.R.A.(N.S.) 767, 112 Am. St. Rep. 303, 76 N. E. 455, 5 A. & E. Ann. Cas. 581; Rowley v. Bigelow, 12 Pick. 306, 23 Am. Dec. 607.

*Scott Rex,* for respondent.

The sale was void, or at least voidable, and could be rescinded. Chicago, B. & N. R. Co. v. L. T. Sowle Elevator Co. 44 Minn. 224, 9 L.R.A. 263, 46 N. W. 342, 560; Amer v. Hightower, 70 Cal. 440, 11 Pac. 697; Lee v. Simmons, 65 Wis. 523, 27 N. W. 174; Alexander v. Swackhamer, 105 Ind. 81, 55 Am. Rep. 180, 4 N. E. 433, 5 N. E. 908; Carter, R. & Co. v. Cream of Wheat Co. 73 Minn. 315, 76 N. W. 55; Third Nat. Bank v. Stillwater Gas Co. 36 Minn. 75, 30 N. W. 440; Rev. Codes, 1905, § 5711.

Appellant was not a good-faith purchaser of the horses. Chicago, B. & N. R. Co. v. L. T. Sowle Elevator Co. 44 Minn. 224, 9 L.R.A. 263, 46 N. W. 342, 560; Tetrault v. O'Connor, 8 N. D. 15, 76 N. W. 225; Cochran v. Stewart, 21 Minn. 436; Cochran v. Stewart, 57 Minn. 499, 59 N. W. 543; Freeman v. Kraemer, 63 Minn. 242, 65 N. W. 455; Globe Mill. Co. v. Minneapolis Elevator Co. 44 Minn. 153, 46 N. W. 306; Johnson-Brinkman Commission Co. v. Central Bank, 116 Mo. 558, 38 Am. St. Rep. 615, 22 S. W. 813, 23 Am. & Eng. Enc. Law, 1137, 1166, 1169; Wendling Lumber Co. v. Glenwood Lumber Co. 153 Cal. 411, 95 Pac. 1029.

Burden of proof to show good faith was on the purchaser. Starr Bros. v. Stevenson, 91 Iowa, 684, 60 N. W. 217; Whitaker Iron Co. v. Preston Nat. Bank, 101 Mich. 146, 59 N. W. 395.

Goss, J. Defendant, Purcell, and one Murphy, attended plaintiff's auction sale at which plaintiff's team was struck off to Murphy on his bid of $302. At the close of the sale, defendant and Murphy secured possession of the horses, and were about to drive away with the team without settling for it, when plaintiff again took possession of the horses. Plaintiff had some time previously gone through bankruptcy, and Murphy attended the sale and bid in the horses evidently intending to secure possession of them and afterwards, on settlement, pay for them in whole or in part by turning in plaintiff's promissory notes, collection of which notes was barred by the bankruptcy proceedings. Plaintiff, anticipating this, told Murphy in defendant's hearing that "you don't get those horses until you settle for them; them old notes don't go at all; you have either got to pay the cash for the horses or put on gilt-edged security." Murphy then gave his check to plaintiff for the full amount of the purchase price, running to plaintiff as payee. Thereupon, plaintiff delivered the horses to Murphy in Purcell's presence, and the two rode away leading the horses behind, taking them to the defendant's home. Purcell testifies that he surmised that Murphy had some of Ditton's old notes at the time the horses were taken from him and replaced in the barn, before Murphy gave the check. Purcell had known Murphy twelve years. Murphy was working for one Bennett at the time.

That night Purcell and his neighbor Lundberg had a talk about Murphy's paying for the horses, in which Lundberg told Purcell that

he "didn't see how Murphy could get out of paying for the team because he gave his check for it," to which Purcell replied that "he didn't know whether it was a check; he thought it was only an order," or that in substances. Lundberg immediately related this to one McGilliveray, who communicated the statement to plaintiff the morning after the sale. Plaintiff, on the day after the sale, presented the check to the bank and payment was refused. The night of the sale Murphy had told the cashier of the bank not to send the check in until he, Murphy, got over, and the next morning Murphy came to Gilby and was in the bank when the check was presented for payment and dishonored, following which an offer was made by Murphy and the banker to settle the matter if plaintiff would discount the price of the horses $75 or $100, which plaintiff refused to do. Murphy then attempted to turn in the old notes of respondent, barred by bankruptcy proceedings, but to this plaintiff would not consent, and, no settlement being arrived at, plaintiff returned to Murphy the worthless check given the day before in settlement. Murphy explained to the banker that in giving the check "he considered that he was giving an order," "that it was an order until such time as he could come in and make settlement." He had left the old notes before this with the bank.

Defendant claims to own the horses; testified that he bought the horses paying for them the second day after the sale by a check to Bennett, with whom Murphy had previously arranged by telephone that such payment would be made; that he paid Bennett $230 for the team, of which payment Murphy received the benefit. Eight days after the sale, plaintiff informed defendant that he refused to recognize any rights of Murphy under the sale, and demanded the horses; to which defendant replied that "he expected that, as Murphy told him not to give them up, to stand pat." Defendant explains this by testifying that as soon as he found out there was trouble about his deal with Murphy, that he told Murphy that he wanted him to stand back of the deal or give him his money. Murphy agreed to stand back of the deal, and told him to "stand pat." Defendant was present at the sale and knew what Murphy had bid for the team. Defendant alleges that he had no notice of any rights of the plaintiff in the deal at the time of his purchase, or that plaintiff claimed any interest in the horses.

It is apparent from the testimony that the sale to defendant by Mur-

phy, and the arrangement for payment by Purcell to Bennett of the $230 for the team, were made on or before the night following the auction sale. It also appears that, although defendant denies any knowledge of any rights of Ditton in the team, yet, if the testimony of Lundberg be true, Purcell must have known the check received by plaintiff on the sale as payment was either bogus or, as defendant terms it, "only an order." The facts occurring the day after the sale verified defendant's statement as to the check being but an order, and harmonize with Murphy's statement to the bank that he considered it but an order with the settlement to follow, in which he, Murphy, should obtain a discount from the purchase price bid or force Ditton to accept in part payment some of his old notes barred by bankruptcy. Where did Purcell get his advance knowledge that the check was but an order, except from Murphy? The auction sale commenced after dinner, and that same night defendant is in possession of the horses under his claim of good-faith purchase. So, within a few hours at most of the time of the purchase of the horses at auction sale, Purcell is evidently familiar with Murphy's scheme to defraud plaintiff, commenced at the auction and consummated by nonpayment the next day. With this knowledge defendant paid his money for the team two days afterwards. In spite of this defendant now contends that the ostensible ownership of the horses was conferred upon Murphy by the delivery of the horses in defendant's presence to Murphy; and that defendant, relying upon the title of the horses being in Murphy, purchased them of Murphy in good faith, and without notice of any claim or right of plaintiff in the horses, and that the loss, if any, should fall upon plaintiff; that plaintiff failed to rescind the sale within a reasonable time after discovery of the fraud, and is precluded thereby from recovery.

The acts of Murphy were clearly a fraud upon the plaintiff. Murphy bid in the horses with no intent to pay the amount of the bid. He intended to turn in the old notes of Ditton on the purchase price; he had previously made arrangements with the bank to do this, as is shown by his leaving the old notes with the bank, evidently that they might be in readiness if their payment was obtained in settlement. He gave the check intending it not as payment, as plaintiff believed it to be, but rather as the means of bringing plaintiff to the bank, where such a settlement could be forced and something realized on the notes otherwise uncollectable. By such deceit he obtained possession

of the team without paying any value for them, and with the present intent not to pay the purchase price. A purchase with such intent is a fraud on the seller under all authorities, because of which the seller may, if he so elects within a reasonable time, rescind the sale and recover the property so obtained by the fraud of the buyer; but until such rescission, the voidable sale remains such with voidable title in the purchaser. Mechem, Sales, §§ 148, 889, 891, 892, 901, 907; Donaldson v. Farwell, 93 U. S. 631, 23 L. ed. 993, and note; Fechheimer v. Baum, 2 L.R.A. 153, and note (37 Fed. 167); Morrow Shoe Mfg. Co. v. New England Shoe Co. 24 L.R.A. 417, 6 C. C. A. 508, 18 U. S. App. 256, 57 Fed. 685; King v. Jacobson, 35 N. Y. S. R. 808, 12 N. Y. Supp. 584; See also vol. 8 of Rose's Notes of U. S. Reps. 1024; 23 Century Dig. Col. 174 et seq.; 17 Decen. Dig. 42 and 44.

The purchase being therefore fraudulent, and the sale voidable at plaintiff's option, if rescinded with reasonable promptness, the burden of proof of better title in the purchaser than his fraudulent vendor possessed rests upon the defendant, who may prove good title in himself by proof, by a preponderance of evidence, of his purchase of the team for an adequate consideration in good faith, without knowledge of his vendor's fraud, and without notice of any fraudulent acts or intent of his vendor, or knowledge of facts sufficient to put defendant or a reasonably prudent man on inquiry as to the existence of the fraud in the purchase and sale by which defendant's vendor obtained the property. Such a purchase, without knowledge of fraudulent act or intent, or of acts imputing notice sufficient to compel inquiry, would constitute defendant a bona fide purchaser for value, and confer upon him perfect title to the property in question. But the burden of proof to establish such good-faith purchase is upon the subvendee, defendant, who is claiming a perfect title after it has been established that his vendor had but a voidable title. When defendant sets up, as he does by his claim of good-faith purchase, better title than his vendor had, the burden of proving his superior title is assumed by and falls upon the defendant as the party asserting it, such vendor's fraudulent acquisition of the property being once established. The burden therefore, is not on plaintiff to prove the weakness of defendant's title, by proving fraudulent purchase or purchase with notice of defendant's vendor's fraud. The great weight of authority upholds this rule as

to burden of proof, and the only conflict is as to the degree of proof required of the vendee to meet or satisfy such burden resting upon him.

Easter v. Allen, 8 Allen, 7; Gowing v. Warner, 29 Misc. 593, 61 N. Y. Supp. 500, same case in 30 Misc. 593, 62 N. Y. Supp. 797; Haskins v. Warren, 115 Mass. 514; Moyer v. Bloomingdale, 38 App. Div. 227, 56 N. Y. Supp. 991; Devoe v. Brandt, 53 N. Y. 462; Seymour v. McKinstry, 106 N. Y. 240, 12 N. E. 348, 14 N. E. 94; King v. Jacobson, 35 N. Y. S. R. 808, 12 N. Y. Supp. 584; Strickland v. Leggett, 50 N. Y. S. R. 451, 24 N. Y. Supp. 356; Blake v. Blackley, 109 N. C. 257, 26 Am. St. Rep. 566, 13 S. E. 786; Smith v. Young, 109 N. C. 224, 13 S. E. 735; Morrow Shoe Mfg. Co. v. New England Co. 24 L.R.A. 417, 6 C. C. A. 508, 18 U. S. App. 256, 57 Fed. 685; Letson v. Reed, 45 Mich. 27, 7 N. W. 231; Berry v. Whitney, 40 Mich. 65; Whitaker Iron Co. v. Preston Nat. Bank, 101 Mich. 146, 59 N. W. 395; Shotwell v. Harrison, 22 Mich. 410; Benjamin, Sales, note p. 446; Starr Bros. v. Stevenson, 91 Iowa, 684, 60 N. W. 217; Sillyman v. King, 36 Iowa, 207; Schulein v. Hainer, 48 Kan. 249, 29 Pac. 171; Bughman v. Central Bank, 159 Pa. 94, 28 Atl. 209; Levy v. Cooke, 143 Pa. 607, 22 Atl. 857; Hoffman v. Noble, 6 Met. 68, 39 Am. Dec. 711; Harner v. Fisher, 58 Pa. 453; 43 Century Dig. Col. 959, 980, 984, 986, et seq.; Fomby v. Colquitt, 56 Ark. 537, 20 S. W. 413; Sargent v. Strum, 23 Cal. 359, 83 Am. Dec. 118; Hanchett v. Kembark, — Ill. —, 2 N. E. 512, 516; Leedom v. Ward Furniture, Stove & Carpet Co. 38 Mo. App. 425; McLeod v. First Nat. Bank, 42 Miss. 99; Wafer v. Harvey County Bank, 46 Kan. 597, 26 Pac. 1032; Kilpatrick-Koch Dry Goods Co. v. Kahn, 53 Kan. 274, 36 Pac. 327; Reid, M. & Co. v. Bird, 15 Colo. App. 116, 61 Pac. 353. Alabama holds the contrary. See Spira v. Hornthall, 77 Ala. 137; Roswald v. J. F. Imbs & Co. 78 Ala. 315; Kyle v. Ward, 81 Ala. 120, 1 So. 468; Hoyt & Bros. Mfg. Co. v. Turner, 84 Ala. 523, 4 So. 658; Scheuer v. Goetter, 102 Ala. 313, 14 So. 774.

Instead of having met such burden of proof cast upon him, the evidence in the case raises a strong inference of defendant's complicity in the fraudulent purchase, sufficient, at least, to have permitted the case to have been submitted to a jury on that score, had the case been tried to a jury instead of to the court. If defendant did not actually participate in the fraud through which Murphy procured the team, there is evidence that he knew of the fraudulent nature of the trans-

action and Murphy's intent not to pay except by offsetting the old notes against the debt; and if he did not actually purchase with full knowledge of such fraud, he paid his money possessing sufficient knowledge thereof to have put him, as a reasonably prudent man, on inquiry as to the fraud, before making payment. The evidence can be construed as conflicting on these particulars, but the findings thereon of the trial court against defendant's claims are as conclusive on the facts as a jury verdict would have been.

But defendant contends that even if Murphy did intend to collect the old notes in settlement, and with such intent bid in the horses, it was nothing immoral or unconscientious, and did not amount to a fraud; that the bankruptcy had not removed the moral obligation of plaintiff to pay his notes held by Murphy, and that common honesty required plaintiff to accept the notes in payment for said horses, if tendered by Murphy for said purpose. It is true that the bankruptcy proceedings but barred the remedy, and left the debt remaining unsatisfied, and morally as binding upon the plaintiff as his obligation though the bankruptcy proceedings had never been had; but it is with the legal phase of the question we are dealing. So far as collection of the note by machinery of law was concerned, plaintiff was discharged from legal obligation to pay the debt; and payment for the horses could not be made by offsetting the old notes against the purchase price, without the express consent of plaintiff. This plaintiff positively at all times refused to give, and, to head off such a claim, retook possession of the horses, and delivered them to Murphy only on payment by check of the full purchase price, the supposed equivalent of a cash settlement for the horses. As is said in a very similar case, Harner v. Fisher, 58 Pa. 453: "The same excuse might, with the same plausibility, have been urged if he had taken the beast by force or in the nighttime. A creditor has no more right to defraud his debtor into parting with his property for his benefit than anybody else; and the latter is as well entitled to the privilege of assenting to the disposition of it, when it is not taken by law, as other persons." The fact remains that plaintiff was deceived and defrauded into parting with his property by the falsehood and deceit of Murphy, clearly apparent from the circumstances surrounding the whole transaction, particularly the giving of the bogus check in payment of the purchase price of the property, by means of which, and not otherwise, pos-

session thereof was delivered to Murphy. The gravamen of the fraud was in wilfully and deceitfully creating the impression on the mind of plaintiff that the check was valid and would procure the cash according to its terms on its being presented for payment. Its delivery to plaintiff with the contrary false and fraudulent intent in Murphy, with the knowledge of its worthlessness, and the obtaining thereby of the team, was the equivalent of the obtaining of such property under false pretenses. If citations in support of this reasoning are needed, see Blake v. Blackley, 109 N. C. 257, 26 Am. St. Rep. 566, 13 S. E. 786, in which, in a somewhat similar case, the court uses the following language: "A creditor is not allowed, by practising a fraud, to acquire title to the property of his debtor, even with the purpose of crediting its value on a just debt. . . . If the law should give its sanction to the wrongful conversion of property, whether by force or fraud, for the purpose of collecting even undisputed debts, the end would not justify the means, either legally or morally."

As to the promptness with which plaintiff rescinded the sale, he acted with reasonable diligence. Payment was made by defendant the day after plaintiff became aware of the fraud practised upon him. A week afterward he gave notice of rescission to defendant. As to Murphy, the sale was rescinded the day after the auction, and the check returned. Even though defendant was a good-faith purchaser, plaintiff acted with sufficient diligence. If he was a party to the fraud, of which there is evidence, defendant certainly cannot complain that his own fraud resulted to his injury, or that plaintiff took a week's time in which to determine how to protect his rights in the matter.

Defendant also urges that plaintiff's complaint does not state a cause of action. Defendant cannot now be heard to urge this assignment. He answered the complaint, went to trial, litigated the action on the merits, and findings were found sufficient upon which to base the judgment rendered, and thereon judgment accordingly was entered. The sufficiency of the complaint was first challenged on motion for new trial. Prior thereto the parties and the court treated the complaint as sufficient, and if any defect therein existed it is cured by the findings found and judgment entered, without the sufficiency of the complaint being brought in issue. Attacks on pleadings made for the first time in this court are not looked upon with favor, and will not be sustained if the pleading liberally construed is good, or if the defects could have

been remedied by amendment in the court below. Conceding the complaint to be defective, it could have been amended, had its sufficiency been questioned prior to judgment. This is not new doctrine in this court. See Paulson v. Ward, 4 N. D. 100, 58 N. W. 792; Purcell v. St. Paul F. & M. Ins. Co. 5 N. D. 100, 64 N. W. 943; Marshall v. Andrews, 8 N. D. 364, 79 N. W. 851; Gooler v. Eidsness, 18 N. D. 338, 121 N. W. 83.

This disposes of all assignments of error urged for our consideration adversely to appellant. The judgment appealed from is ordered affirmed.

All concur, except MORGAN, Ch. J., not participating; A. G. BURR, Judge of the Ninth Judicial District, sitting by request.