## ATLANTIC LIFE INS. CO. v. FIRST NAT. BANK IN DALLAS et al.*

### No. 6560.

Circuit Court of Appeals, Fifth Circuit.

Jan. 16, 1933.

*Rehearing denied February 20, 1933.

W. T. Henry, of Dallas, Tex., and Alex W. Parker, of Richmond Va., for appellant.

Prentice Wilson, A. S. Hardwicke, Robert Allan Ritchie, J. W. Hassell, and Rosser J. Coke, all of Dallas, Tex., for respondents.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

BRYAN, Circuit Judge.

This is an appeal by the Atlantic Life Insurance Company from a judgment against it in favor of the First National Bank in Dallas. The judgment represents the value of three notes, aggregating approximately $16,000, which were secured by deeds of trust constituting first liens on real property, and is based upon the wrongful conversion by the insurance company to its own use of those notes and deeds of trust. The bank sued as assignee of the Investment Securities Company, which originally made the loans and then assigned its rights in them to the bank. The insurance company, while admitting that it held the notes and deeds of trust, that they were ample security for the loans they represented, and that it owed the investment company the amount sued for, pleaded by way of set-off that the investment company was indebted to it in a larger amount, because of a failure to repurchase from it other similar loans which it had previously bought from the investment company. Its right of set-off was sought to be sustained by pleading and proof, to the effect that, by agreement and a course of dealing between them extending over a period of some three years, the insurance company had bought from the investment company other notes and trust deeds constituting first liens on real property amounting in the aggregate to $1,500,000; that every such purchase was made subject to an agreement by the investment company to repurchase within six months any loan which the insurance company considered unsatisfactory; that within such six months' period the insurance company had demanded that the investment company repurchase the loans described in the plea of set-off, but that the investment company had failed, and, by becoming bankrupt, had become unable to comply with its obligation to repurchase such loans.

The investment company, throughout the three-year period referred to, was engaged in the business of accepting notes and trust deeds from owners of real estate and selling them to others; but principally to the insurance company. In the course of dealing between them the practice had grown up for the investment company to notify the insurance company that it had a loan for sale, and for the insurance company to make an investigation as to the value of the security. If the insurance company was satisfied with the security offered and desired to purchase any particular loan, it would notify the investment company by letter to that effect, and the investment company would then forward to it the note and deed of trust for inspection and examination as to form and legal sufficiency. Immediately upon its approval of a loan, the insurance company uniformly had been prompt in forwarding its check in payment. About a year before the loans involved in this suit were purchased, the investment company wrote to the insurance company that it was borrowing considerable money from the bank to handle loans which the insurance company had agreed to purchase, stating that while it did not borrow on all loans the money derived therefrom was deposited by it with the bank, and asked that thereafter checks in payment be made direct to the bank, so as to afford "every protection possible" to the bank. The insurance company replied that in the future, until further notice, it would make all checks in settlement of loans payable to the bank for the account of the investment company. This method of settlement for all loans was thereafter continued without interruption until after the notes and trust deeds here involved were received by the insurance company. Before those three notes and deeds of trust were forwarded to the insurance company, the investment company assigned its interest in them to the bank as security for a loan received from it. Upon their receipt the insurance company for the first time departed from its custom of making prompt payment, and later wrote to the investment company that it would not make settlement until the investment company had complied with its obligation to repurchase other loans which are now relied on to sustain the plea of set-off. The investment company later went into voluntary bankruptcy, and in the bankruptcy proceedings the insurance company was permitted to apply the notes and deeds of trust which the bank claimed under its as-signments from the investment company to a balance found by the referee to be due on account of the investment company's failure to "service" and repurchase other and prior loans it had taken and sold to the insurance company. But before bankruptcy the bank had notified the insurance company of its assignments, and had demanded the return of the notes and deeds of trust for the wrongful conversion of which it sues.

The District Judge was of the opinion that the insurance company had notice of the bank's assignments, and therefore was not entitled to maintain its defense. We are inclined to agree that this conclusion was correct. It is true that the insurance company did not have actual knowledge that the investment company borrowed from the bank on each and every transaction, but it did have knowledge sufficient to put it upon notice that in each transaction it was probable that a temporary loan had been obtained pending the delay in transmitting payment. The method of making the insurance company's checks payable directly to the bank had to its knowledge been made for the purpose of affording protection to the bank. The knowledge of these facts and circumstances reasonably put the insurance company upon inquiry, and the effect is the same as if actual notice had been given. Tritt's Adm'r v. Colwell's Adm'r, 31 Pa. 228; Williston on Contracts, § 437; 2 R. C. L. 624, 625. In view of the correspondence and course of dealing for more than a year between them, the insurance company would hardly have been justified in ignoring the bank and sending its check direct to the investment company. But upon another, and as we think, a more conclusive ground, the appeal must fail. The insurance company never acquired the right in any transaction to take and keep any note or trust deed without paying the price agreed upon. The evidence does not disclose that it ever was the intention of the parties concerned to treat the sales of security as anything but cash sales. There is no evidence which indicates that the seller and the buyer intended the sale of securities upon credit. No single sale had any connection with any other sale; each stood upon its own merits. The obligation of the investment company to repurchase such loans as might within six months prove unsatisfactory to the insurance company was a covenant for the performance of which the financial responsibility of the investment company was ac-

588

cepted as being sufficient, and it was only after the investment company became financially involved that the insurance company conceived the idea of treating the transactions as mutually dependent upon each other. As parties may contract to suit themselves, of course they could provide, if such was their intention, that payment should be a condition precedent to the passage of title, The Elgee Cotton Cases, 22 Wall. (89 U. S.) 180, 187, 22 L. Ed. 863; and that the investment company and the insurance company did just that we are convinced by the evidence. If in the case of a sale of securities the investment company had made draft with notes and deeds of trust attached to be delivered upon payment, as is usually done in such cases by men of business, there could hardly be a question but that immediate payment would be considered an essential condition precedent to the passage of title. The fact that the investment company trusted the insurance company to make payment after being satisfied upon inspection of the legal sufficiency of the papers evidencing a loan, does not change the rule, although it makes the real intention more difficult to prove. 23 R. C. L. 1385. In Wilson & Wallace v. Comer, 125 Ga. 500, 54 S. E. 355, 114 Am. St. Rep. 245, lumber was shipped upon the understanding that when it was received the buyer would mail his check in payment; and it was there held that no title passed until payment was made. If a cash sale be intended, it is not converted into a sale on credit merely because the seller may be in debt to the buyer. In Drake v. Scott, 136 Ala. 261, 33 So. 873, 96 Am. St. Rep. 25, where the sale was made for cash, the buyer was not permitted to settle by tendering an account which was due by the seller; but it was held that payment was a condition precedent to the passage of title. Again in Blake v. Blackley, 109 N. C. 257, 13 S. E. 786, 26 Am. St. Rep. 566, it was held that a debtor who was induced to part with possession of property by the promise to pay cash for it upon delivery was entitled to maintain an action for wrongful conversion. In no event could the insurance company ignore the rights of the bank after receiving notice of the assignments, proceed to liquidate its claim against the investment company in the bankruptcy proceedings, and then successfully plead the liquidated amount as a set-off; for before bankruptcy the rights of the bank had become fixed.

The judgment is affirmed.